Jacob H. Williams, Appellee, v. Estate of Henry W. Frederick, Deceased. Paul W. Busse, Administrator, Appellant.

Gen. No. 8,998.

Opinion filed January 15, 1937. Rehearing denied April 6, 1937.

WAYNE C. TOWNLEY and J. OSCAR HALL, both of Bloomington, for appellant.

REN THURMAN, of Peoria, for appellee; GEORGE W. HUNT and RALPH W. STONE, both of Peoria, of counsel.

Mr. Justice Davis delivered the opinion of the court.

This is an appeal by Paul W. Busse, administrator of the estate of Henry W. Frederick, deceased, from a judgment rendered by the circuit court of Tazewell county, Illinois, in a suit on a claim filed by Jacob H. Williams in the county court of Tazewell county. The Rio Grande Development Co., a corporation, was engaged in selling Texas lands. One Louis Hoffman who resided in Peoria was vice president and treasurer of said corporation. Prospective buyers were taken to Texas on excursions by Hoffman, and, in January, 1931, Henry W. Frederick went to Texas on one of the excursions. On February 2, 1931, he entered into a contract with said corporation to purchase 23.96 acres of land in Hidalgo county, Texas, for a total sum of $30,875.

Frederick paid $20,000 in cash to Hoffman and delivered to him $5,500 in what was known as the Wilkinson participating certificates. He also paid Hoffman cash in the sum of $1,375, and gave to the Rio Grande Development Co. a vendor's lien note for $4,000, and on February 28, 1931, the Rio Grande Development Co. executed and delivered to Frederick a warranty deed to said real estate, antedating it to February 2, 1931. This deed was signed the Rio Grande Development Co., by Louis F. Hoffman, first vice president, and was recorded in Hidalgo county, Texas, on March 16, 1931. The vendor's lien note for $4,000 has no connection with the note sued on in this action.

Hoffman testified that before the contract was signed he had a conversation with Mr. Frederick about the Wilkinson participating certificates referred to in the evidence as the Wilkinson farm loan, and that he had told Frederick that he would accept said participating certificates subject to investigation; that, if they were not worth $5,500, Mr. Frederick should make up the

difference; the conversations took place in a restaurant in Washington, Illinois, just before the contract was signed, and that they went from the restaurant across to the Danforth Bank where the contract was written and signed in the presence of Mr. Busse, who was cashier of the bank. Frederick, Hoffman and Busse were the only ones present when the contract was signed. There was nothing said at the time the contract was drawn and signed at the bank about Hoffman accepting the Wilkinson participating certificates on any contingent basis or subject to investigation. Mr. Hoffman further testified that two or three months later, in April or May, 1931, he made an investigation as to the value of the Wilkinson participating certificates and that, in his opinion, they were not worth $5,500; that he told Frederick that he would have to make up the difference and that, if he did not do so, he, Hoffman, would institute a suit to set aside the deed to the Texas property on the ground of fraud. Hoffman fixed the value of the certificates at $1,500, and demanded $4,000 additional from Frederick. Frederick offered other mortgage paper, which Hoffman refused, and Hoffman requested Frederick to give his personal note for the $4,000, and on May 16, 1931, as an adjustment of the Wilkinson participating certificate without further consideration Frederick signed the note sued on in this action and delivered it to Hoffman, which note was antedated to February 2, 1931.

Hoffman had delivered the note in question to the Buehler estate in the fall of 1932, and, on the 9th day of October, 1933, while the note was still in the possession of the Buehler estate, Hoffman executed a separate written instrument of assignment, purporting to assign all of his interest in the note to the plaintiff in this case, Jacob H. Williams.

On December 27, 1933, and while the note was still in the possession of the Buehler estate, Williams filed

a claim against the estate of Henry W. Frederick, deceased, and attached what purported to be a copy of the note to the claim. At the time the claim was filed neither Hoffman nor Williams had possession of the note, and it had not been indorsed by Hoffman. No copy of the separate written instrument of assignment was filed with the claim or made a part of it. The note became due February 2, 1934. Three months later, after Hoffman received the note from the Buehler estate, on or about May 17, 1934, he indorsed it and delivered it to Williams. Hoffman never returned any part of the Wilkinson participating certificates to Frederick but traded them to one Crosby on December 26, 1931, for an equity in a house and lot in Peoria, which equity Crosby testified, and the evidence discloses, was worth between $5,000 and $6,000, and he still has the Wilkinson participating certificates and says his income from them last year was about $500.

On a trial of the case in the circuit court of Tazewell county the court found the issues for the plaintiff and rendered judgment against the estate of Henry W. Frederick, deceased, in the sum of $4,580 with costs, the same to be paid in due course of administration.

Among the errors relied upon by appellant for a reversal of the judgment are the following:

The court erred in permitting the plaintiff to amend his claim filed in the county court by withdrawing the exhibit attached thereto; in admitting in evidence the note offered by plaintiff; in overruling the defendant's motion for judgment at the conclusion of plaintiff's evidence; in finding the issues for plaintiff and against defendant; the judgment of the court is contrary to the law and the evidence.

The claim of Williams, filed on December 27, 1933, against the estate of Henry W. Frederick, deceased, in the county court of Tazewell county, alleges that the estate owed him $4,000 with six per cent interest from

August 2, 1933, on a note dated February 2, 1931, due on February 2, 1934, made by H. W. Frederick and payable to Louis Hoffman, trustee, a copy of which was attached to said claim, and which did not bear the indorsement of Hoffman. The note was not obtained from the Buehler estate until about May 17, 1934, when it was indorsed by Hoffman and given to Williams.

On the trial of said cause, on July 3, 1935, the note in question was offered in evidence by plaintiff, to which offer the defendant objected on the ground that the note offered was not the same note made a part of the claim filed, in that the note offered shows that it was indorsed to Jacob H. Williams by Louis Hoffman, trustee, while the note filed shows no indorsement. The objection was sustained by the court. Plaintiff made a motion to amend the claim by withdrawing the copy of the note attached to the claim, and upon being offered the note was admitted in evidence and shows the indorsement by Louis Hoffman to Jacob H. Williams.

When appellee filed his claim in the county court he did not have possession of the note, and the same had never been delivered to him by the payee thereof for value, and the same had not been indorsed by the person named as payee therein. The only title he had was that obtained by a separate assignment thereof and under this state of facts the legal title to the note did not pass to him. (*Packer v. Roberts,* 140 Ill. 671, 29 N. E. 668.)

The provisions of the Negotiable Instruments Act provide that notes, made payable to any person named as payee therein, shall be assignable, by indorsement thereon, under the hand of such person (Ill. State Bar Stats. 1935, ch. 98, ¶ 2, sec. 4; Jones Ill. Stats. Ann. 89.002; Smith-Hurd Ann. St., ch. 98, ¶ 2;) and such indorsement must be written on the note itself or upon a paper attached thereto. (Ill. State Bar Stats. 1935, ch. 98, ¶ 51, sec. 31; Jones Ill. Stats. Ann. 89.051; Smith-Hurd Ann. St., ch. 98, ¶ 51.)

It is true that a note may be assigned by a separate instrument without indorsement so as to vest the legal title in the assignee, provided the note is also transferred by delivery to the assignee.

"Where the holder of an instrument payable to his order transfers it for value without indorsing it, the transferer vests in the transferee such title as the transferer had therein, and the transferee acquires, in addition, the right to enforce the instrument against one who signed for the accommodation of the transferer and the right to have the indorsement of the transferer if omitted by accident or mistake. But for the purpose of determining whether the transferee is a holder in due course, the negotiation takes effect as of the time when the indorsement is actually made." (Ill. State Bar Stats. 1935, ch. 98, ¶ 69, sec. 49; Jones Ill. Stats. Ann. 89.069; Smith-Hurd Ann. St., ch. 98, ¶ 69.) It is only by making a transfer of the note for value, that is, by a delivery of the note to the transferee, that such title as the transferer had vests in the transferee.

"The indorsement of commercial paper requires not only the signature of the payee or other holder of the legal title, but the delivery of the instrument to the indorsee. The assignment indorsed on the back of the note is in the control of the payee and he may strike it out if he chooses." (*Elvin v. Wuchetich,* 326 Ill. 285, 157 N. E. 243.)

Where, as in this case, the claimant sought to recover as indorsee of the note, it was essential to his right to recover to show that when he filed his claim he had the legal title to the note in question. *Elvin v. Wuchetich, supra.* "The payee of a promissory note, until assignment, holds the legal title, and no one else can sue and recover upon it. This is elementary, and needs neither citation of authorities nor reasoning to render it manifest." *Newman v. Ravenscroft,* 67 Ill. 496.

The indorsement of a note after suit is started does not invest the indorsee with title so that he can maintain the action. *Rothschild v. Bruscke,* 33 Ill. App. 282. In case of an appeal from the probate court, the circuit court exercises appellate jurisdiction and cannot permit the amendment of a claim so as to raise a new cause of action. *Elder v. Whittemore,* 51 Ill. App. 662; *Cairo Meal & Cake Co. v. Estate of Brigham,* 268 Ill. App. 510–512.

The note in question not having been indorsed and delivered to claimant until May 17, 1934, long after the filing of the claim and the due date of the note, we are of opinion that the circuit court erred in permitting claimant to amend his claim and thereby raise a new cause of action and in entering judgment thereon.

It is also insisted by appellee that he should be considered under his written assignment to have acquired the rights of an assignee of a chose in action and that he could sue on the note in his own name and being only required to show he was a bona fide owner thereof and how he acquired title. In support of his contention he cites sec. 22 of the Civil Practice Act. (Ill. State Bar Stats. 1935, ch. 110, ¶ 150; Jones Ill. Stats. Ann. 104.022; Smith-Hurd Ann. St., ch. 110, ¶ 146.)

Section 22 of the Civil Practice Act is in part as follows:

"The assignee and owner of a non-negotiable chose in action may sue thereon in his own name, and he shall in his pleading on oath, allege that he is the actual *bona fide* owner thereof, and set forth how and when he acquired title."

By the terms of this statute it is only a non-negotiable chose in action that the owner and assignee thereof can sue on in his own name. The assignment and transfer of negotiable instruments and the rights of the assignee therein are fixed by the provisions of the Negotiable Instruments Act herein above cited and is

in no way governed by said section 22 of the Civil Practice Act.

Appellant contends that there was no consideration for the giving of the note sued on. Under the terms of the contract, when the purchase price of $30,875 was paid, Frederick was to have a deed, which was delivered to him and recorded in Hidalgo county, Texas, on March 16, 1931.

Hoffman, after the close of the transaction, claimed he had a conversation with Frederick, prior to the execution of the contract, in which he told Frederick that he would accept the Wilkinson participating certificates subject to investigation. No reservation of this kind was made in the contract. Hoffman also claimed that in April or May, 1931, he went to Frederick and said to him that he had investigated and found the certificates were not worth $5,500 and told Frederick that he would have to make up the difference of $4,000. Finally, on May 16, 1931, Frederick signed the note sued on and delivered it to Hoffman, which was antedated to February 2, 1931. The note was made payable to Hoffman, trustee, and not to the Rio Grande Development Co. .

The evidence fails to show that Frederick in any way made any misrepresentations with relation to the value of the Wilkinson certificates. All of the conversations in relation to the same, as shown by the evidence of Hoffman, were had prior to the drafting and execution of the contract and any conversations, agreements or promise that may have been made or understanding had about the Wilkinson certificates are merged in the written contract. Any such verbal contract, if any, is unenforceable. The contract specifically provides: "All promises, understandings or agreements which may have been heretofore made or had with reference to the sale by the seller and the purchaser are abrogated, discharged and annulled, it

being hereby specifically agreed that this written instrument constitutes and expresses the whole agreement of the parties, and that reliance is had upon nothing not herein contained.'' (*Grubb v. Milan,* 249 Ill. 456, 463, 94 N. E. 927; *Lanum v. Harrington,* 267 Ill. 57, 107 N. E. 826.)

Appellee contends that where a person, as a result of a compromise agreement, gives his promissory note in settlement of a doubtful claim is liable thereon and cannot thereafter urge want of consideration for the note, even though the claim could not have been legally enforced against him, provided there was neither actual nor constructive fraud and the parties acted in good faith with full knowledge of all the facts. Hoffman was the only witness who testified to this transaction, and from his testimony it is clear that the note was not given in settlement of a disputed claim. The note was given pursuant to a verbal agreement entered into prior to the signing of the written contract.

While the law is that it is sufficient to support a compromise that there be an actual controversy between the parties of which the issue fairly may be considered by both parties as doubtful, and that at the time of the compromise they in good faith so considered it, yet, the surrender of a claim which is entirely without foundation either in law or equity, does not afford a sufficient consideration for a compromise. (*Good v. Krause,* 215 Ill. App. 333.)

There was actually no controversy between the parties of which the issue fairly could be considered by both parties as doubtful. Hoffman told Frederick that the Wilkinson loan was not of the value of $5,500 and that he would have to make it up and, thereupon, Frederick offered other loans to Hoffman in place of the Wilkinson paper which Hoffman rejected. He then proposed to Frederick that he give him his personal note for $4,000, which he did. The evidence fails to

show that Frederick in any way disputed the claim of Hoffman and he let him fix the value of the Wilkinson paper and the amount that he must pay to make the loan of the value of $5,500. From the evidence it is clear that the claim was entirely without foundation either in law or equity.

There was no consideration for the giving of the note. The verbal agreement made between the parties, as testified to by Hoffman, before the contract was entered into was merged in the written agreement.

Williams was not the holder of the note in due course. The note was never delivered to him nor assigned by the payee Hoffman until May 17, 1934, long after the same became due. We are of opinion that the judgment of the circuit court of Tazewell county should be reversed.

*Judgment reversed.*

We find that the alleged promise of the defendant sued on in this case had no consideration to support it and that the note in question was never delivered to the plaintiff by the payee thereof or indorsed by him until May 17, 1934.