THOMAS LeMASTER, Plaintiff-Appellee, *v.* AMSTED INDUSTRIES, INC., Defendant and Third-Party Plaintiff-Appellant.—(William R. Montgomery & Associates, Inc., Third-Party Defendant-Appellee.)

Fifth District   No. 81—377

Opinion filed November 10, 1982.

Jonathan Ries and Kathryn A. Kottemann, both of Shepherd, Sandberg & Phoenix, of St. Louis, Missouri, for appellant.

Wagner, Bertrand, Bauman & Schmieder, of Belleville (Bernard H. Bertrand, of counsel), for appellee William R. Montgomery & Associates, Inc.

William W. Schooley and Kathryn P. Taylor, both of Law Offices of William W. Schooley, of Granite City, for appellee Thomas LeMaster.

JUSTICE WELCH delivered the opinion of the court:

On August 8, 1978, the plaintiff was injured when he fell from a roof at Amsted Industries' Granite City, Illinois, plant. He brought suit against Amsted in the circuit court of Madison County, alleging that his injuries had resulted from Amsted's violation of the Structural Work Act (Ill. Rev. Stat. 1981, ch. 48, par. 60 *et seq.*). Amsted, in turn, filed a third-party complaint against the plaintiff's employer, William R. Montgomery and Associates, with whom Amsted had contracted to perform roofing repair work at its plant. Count I of the complaint sought indemnity from Montgomery, while the second count requested contribution for an appropriate portion of the plaintiff's damages.

Prior to trial, counsel for Montgomery informed the court that his client had entered into a settlement agreement with the plaintiff. According to the terms of this agreement, which was conditioned upon the dismissal of Amsted's third-party action, the plaintiff released Montgomery from all liability in tort resulting from the August 8, 1978, fall, in return for Montgomery's waiver of its right to seek reimbursement for $28,347 in workers' compensation payments previously made to the plaintiff, plus an additional $35,000 in cash. Counsel for Montgomery argued that because section 2(d) of "An Act in

relation to contribution among joint tortfeasors" (Ill. Rev. Stat. 1981, ch. 70, par. 302(d)) discharges a settling tortfeasor from liability for contribution to any other tortfeasor, Amsted's third-party action should be dismissed. The trial court agreed with this position, and dismissed Amsted's complaint.

The plaintiff's action proceeded to a jury trial against Amsted alone, following which he was awarded $100,000 in damages. The court granted Amsted a setoff in the amount of the $35,000 cash payment made by Montgomery, but did not allow Amsted any credit for the waiver of Montgomery's workers' compensation lien. Amsted has appealed from the dismissal of its third-party complaint, from the order denying it a setoff for the workers' compensation lien waiver and from the judgment in favor of the plaintiff in his original action.

APPEAL OF AMSTED AGAINST MONTGOMERY

In this court, Amsted asserts that the trial court erred in dismissing both the indemnity count and the contribution count of its third-party complaint. Alternatively, Amsted contends that it should have been given $63,347 credit against the $100,000 judgment in favor of the plaintiff. Because we agree that the third-party complaint should not have been dismissed, we need not consider the amount of the setoff. We will first discuss Amsted's indemnity count.

The parties do not dispute that Amsted's third-party complaint states a cause of action for indemnity under the Structural Work Act. That complaint alleged that Amsted had hired Montgomery to do the roofing work at its premises, that it was Montgomery's duty to supervise the work, and that Montgomery had violated the Structural Work Act by, *inter alia*, permitting its employees to use as a scaffold a roof which was not strong enough to support their weight, and failing to inspect that roof when Montgomery knew or should have known that the roof was unsafe. This complaint sufficiently alleges that Montgomery's conduct was "active" or "major fault" in comparison to the "passive" conduct or "minor fault" of Amsted. *Lindsey v. Dean Evans Co.* (1973), 11 Ill. App. 3d 432, 297 N.E.2d 8; *Rovekamp v. Central Construction Co.* (1964), 45 Ill. App. 2d 441, 195 N.E.2d 756.

The question presented by this appeal from the dismissal of Amsted's indemnity action is therefore whether an otherwise valid complaint for indemnity should be dismissed when the third-party defendant settles with the original plaintiff. Neither Montgomery nor Amsted has provided us with any direct authority on this question, and, in fact, the more common situation involves determination of the rights of a defendant/third-party plaintiff who settles the original

action. (See *Nogacz v. Procter & Gamble Manufacturing Co.* (1975), 37 Ill. App. 3d 636, 347 N.E.2d 112; *Skezas v. Safway Steel Products, Inc.* (1967), 85 Ill. App. 2d 295, 229 N.E.2d 781; *Boston v. Old Orchard Business District, Inc.* (1960), 26 Ill. App. 2d 324, 168 N.E.2d 52.) In such a case, the third-party plaintiff is entitled to maintain his indemnity action for the full amount of the settlement, subject to proof that he was responding to a reasonable anticipation of personal liability rather than acting as a mere volunteer in entering into the settlement. *St. Paul Fire & Marine Insurance Co. v. Michelin Tire Corp.* (1973), 12 Ill. App. 3d 165, 169, 298 N.E.2d 289, 292.

The purpose behind allowing a third-party plaintiff to seek indemnity for the full amount of the original claim, reached either by settlement or after adjudication, is to shift the entire responsibility for payment of damages from a party only technically liable for those damages to a party who is truly culpable in giving rise to the original claim. (*Miller v. DeWitt* (1967), 37 Ill. 2d 273, 226 N.E.2d 630.) Indemnity, which rests upon the principle that everyone should be responsible for the consequences of his own acts, is distinguishable from contribution, which is an apportionment of liability among culpable parties. *Van Jacobs v. Parikh* (1981), 97 Ill. App. 3d 610, 422 N.E.2d 979; *Skinner v. Reed-Prentice Division Package Machinery Co.* (1977), 70 Ill. 2d 1, 374 N.E.2d 437, *cert. denied sub nom. Hinckley Plastic, Inc. v. Reed-Prentice Division Package Machinery Co.* (1978), 436 U.S. 946, 56 L. Ed. 2d 787, 98 S. Ct. 2849.

In the case of an action which is settled by a defendant/third-party plaintiff, the purposes of indemnity are served by permitting the settling defendant to seek indemnity from the third-party defendant. There, the plaintiff's damages are established by the settlement (*Gatto v. Walgreen Drug Co.* (1975), 61 Ill. 2d 513, 337 N.E.2d 23, *cert. denied* (1976), 425 U.S. 936, 48 L. Ed. 2d 178, 96 S. Ct. 1669), and if that amount is not shown to be unrealistic or collusive, the defendant may shift the entire responsibility for those damages to the culpable party.

Were we to accept the dismissal of Amsted's indemnity action here, on the other hand, the purposes of an indemnity action would be defeated. When a third-party defendant settles a claim such as the plaintiff's, that settlement does not bar the action against the defendant/third-party plaintiff (see *Kirkham v. Hickerson Brothers Truck Co.* (1971), 29 Colo. App. 303, 485 P.2d 513; *Turner v. Guiliano* (1966), 350 Mass. 657, 216 N.E.2d 562) and is thus not conclusive as to the amount of the plaintiff's damages. After such a settlement is reached, the plaintiff would be well advised to pursue his claim in the

original action, and if, as here, the judgment in that suit exceeds the amount of the settlement, that difference would be imposed on the defendant/third-party plaintiff, whose suit for indemnity would not have even been allowed to be litigated.

This result is patently inequitable. By allowing the indemnity action to be dismissed without trial, a party who is perhaps only technically liable to the plaintiff must shoulder that portion of the judgment which exceeds the amount of the settlement. Moreover, even if the evidence would show that the defendant/third-party plaintiff were partially at fault and would therefore be responsible for contribution, the fact remains that that party would have been denied the opportunity to present any evidence on that issue. Also, the apportionment of damages which would result from the procedure accepted by the trial court would not be based on any assessment of relative fault, but is only a product of the difference between the settlement and the judgment.

For these reasons, we cannot accept Montgomery's theory that a settlement between a third-party defendant and the original plaintiff bars any indemnity actions brought against the third-party defendant as a result of the plaintiff's claim. The trial court thus erred in dismissing the indemnity count of Amsted's third-party action against Montgomery.

Next, we consider Amsted's contribution count against Montgomery. The parties have assumed, without discussion, that contribution is available to a defendant found liable under the Structural Work Act. Our own research has not disclosed a reported case in Illinois involving contribution under that statute, but we believe that the assumption of the parties is correct. Although liability under the Structural Work Act is not based upon negligence, there can be degrees of fault among those who, under the Act, are accountable to an injured plaintiff (*Rovekamp v. Central Construction Co.* (1964), 45 Ill. App. 2d 441, 449, 195 N.E.2d 756, 760), and as a result, indemnity actions, which require the trier of fact to determine which party is primarily at fault, are allowed under that enactment. (*Miller v. DeWitt* (1967), 37 Ill. 2d 273, 226 N.E.2d 630.) A contribution action necessitates a similar weighing of fault, and as a Structural Work Act defendant may shift total responsibility for damages for which he is only technically liable, it would seem to be consistent to allow such a defendant to shift some of the responsibility for damages for which he is partially responsible. The New York courts, in construing a statute (N.Y. Labor Law sec. 240 (McKinney Supp. 1981-1982)) similar to the Structural Work Act and therefore a source of persuasive authority in con-

sidering the Illinois Act (*Bohannon v. Joseph T. Ryerson & Son, Inc.* (1966), 72 Ill. App. 2d 397, 219 N.E.2d 627), have not distinguished between contribution and indemnity and have allowed both types of actions in suits brought under section 240 of the Labor Law. (*Kelly v. Diesel Construction Division of Carl A. Morse, Inc.* (1974), 35 N.Y. 2d 1, 358 N.Y.S.2d 685, 315 N.E.2d 751; *Bernardi v. Getty Refining & Marketing Co.* (1980), 107 Misc. 2d 451, 435 N.Y.S.2d 212.) For these reasons, then, we hold that contribution is available to a party found liable under the Structural Work Act for an injury occurring on or after March 1, 1978. Ill. Rev. Stat. 1981, ch. 70, par. 301; *Harris Trust & Savings Bank v. Ali* (1981), 100 Ill. App. 3d 1, 425 N.E.2d 1359.

■ Having decided that contribution is available to a Structural Work Act defendant, we must next determine whether Amsted's contribution complaint was barred by the settlement between the plaintiff and Montgomery. This issue requires construction of section 2 of "An Act in relation to contribution among joint tortfeasors" (Ill. Rev. Stat. 1981, ch. 70, par. 302). According to that provision, a tortfeasor who is given a release in good faith as part of a settlement with a claimant is discharged from all liability for any contribution to any other tortfeasor. (Ill. Rev. Stat. 1981, ch. 70, par. 302(c)(d).) Initially, it may be questioned whether a claimant's employer may be considered a "tortfeasor," given that the employer's liability arises solely from the Workers' Compensation Act. However, the Illinois Supreme Court in *Skinner v. Reed-Prentice Division Package Machinery Co.* (1977), 70 Ill. 2d 1, 374 N.E.2d 437, *cert. denied sub nom. Hinckley Plastic, Inc. v. Reed-Prentice Division Package Machinery Co.* (1978), 436 U.S. 946, 56 L. Ed. 2d 787, 98 S. Ct. 2849, held that an employer can be liable for contribution, and it follows from this holding that the references to "tortfeasor" in the contribution act may also refer to an employer of a claimant. See also *Doyle v. Rhodes* (1982), 109 Ill. App. 3d 590, which held that the exclusivity provisions of the Workers' Compensation Act do not bar a third-party action for contribution against the original plaintiff's employer.

The broad issue presented by this appeal from the dismissal of Amsted's contribution count is what constitutes a "good faith" settlement and release under the contribution act, and more specifically, whether the settlement and release between the plaintiff and Montgomery can be said to be in good faith. Amsted insists that no good faith was shown by the terms of the release, in which the plaintiff, in return for Montgomery's cash payment and workers' compensation lien waiver, agreed to release Montgomery "from any and all claims,

demands and choses in action which may accrue to me under" the contribution act. According to Amsted, this bargain was illusory, because the plaintiff's only rights against his employer for such a work-related injury are those granted by the Workers' Compensation Act (Ill. Rev. Stat. 1981, ch. 48, pars. 138.5(a), 138.11).

As the Illinois contribution act was enacted as recently as September 1979, there is no reported decisional law purporting to define a good-faith settlement and release under sections 2(c) and 2(d) of the Act. There are also very few cases deciding this issue in other jurisdictions (see Annotations to Uniform Contribution Among Joint Tortfeasors Act sec. 4, 12 Uniform Laws Annotated 63 (1955); *River Garden Farms, Inc. v. Superior Court* (1972), 26 Cal. App. 3d 986, 103 Cal. Rptr. 498; Gordon and Crowley, *Indemnity Issues in Settlement of Multi-Party Actions in Comparative Negligence Jurisdictions*, 48 Ins. Counsel J. 457, 467-69 (1981)), and our research has not disclosed any authority on the question of whether a similar settlement and release between an employee and his employer should immunize that employer from liability for contribution.

Certainly, the ratio of the amount of the settlement to the amount of damages finally awarded is one measure of the good faith of the settlement agreement. (*River Garden Farms*.) But Amsted does not argue that this settlement is unrealistically low, and, when the $63,347 settlement is compared to the $100,000 verdict, we do not believe that such a claim can be made. Amsted's theory is instead that a release cannot have been given in good faith unless it is supported by consideration, and that element is not present in this settlement and release.

As in all contracts, consideration is the quiddity which binds the parties to a settlement agreement. (*Dickey v. Thirty-Three Venturers* (Mo. App. 1977), 550 S.W.2d 926.) The compromise of a disputed claim will provide the consideration for such an agreement (*Smyth v. Kaspar American State Bank* (1956), 9 Ill. 2d 27, 136 N.E.2d 796), and even if the claim is not shown to have been valid, its compromise will support a settlement agreement as long as it is asserted in good faith. (*Stoner v. Stoner* (1953), 351 Ill. App. 304, 115 N.E.2d 103.) These well-accepted principles have thus brought us back to our original statement of the issue. If a good faith settlement under the contribution act must be supported by consideration and if consideration consists of the compromise of a claim which is asserted in good faith, the question again becomes whether the plaintiff's assertion of tort claims against Montgomery could be made in good faith.

Although a disputed claim need not have been a valid one, if a

claim is "entirely without foundation," the claimant will be deemed not to have acted in good faith in asserting or relinquishing it, on the theory that the claimant knew or should have known that the claim could not have been enforced under any state of proof. (*Williams v. Estate of Frederick* (1937), 289 Ill. App. 410, 7 N.E.2d 384; *Woodall v. Peden* (1916), 274 Ill. 301, 113 N.E. 608.) It cannot be doubted that the plaintiff's injuries occurred while he was performing duties within the scope of his employment and that his injuries were not caused by the intentional conduct of Montgomery. Therefore, it is obvious that plaintiff's remedies lie exclusively within the Workers' Compensation Act (*Ferguson v. Roundtable Motor Lodge* (1980), 83 Ill. App. 3d 331, 404 N.E.2d 1039), and the briefs of Montgomery and the plaintiff do not suggest what additional rights the plaintiff may have retained against his employer. [1]

■ We must agree with Amsted that the settlement and release agreement between the plaintiff and Montgomery did not constitute a good-faith settlement because, effectively, the plaintiff had no rights outside of the Workers' Compensation Act which he could relinquish in return for the lien waiver and the cash payment. (Contra, *Meinerz v. Treybig* (La. App. 1971), 245 So. 2d 557, in which a settlement in excess of the maximum workmen's compensation payment was held to be supported by consideration, under a compensation law which does not prohibit common law tort actions against an employer.) Between the plaintiff and Montgomery, an equitable bargain was simply not entered into, and thus the trial court erred in holding that this agreement gave rise to the prohibitions of further contribution contained in sections 2(c) and 2(d) of the contribution act. Amsted's contribution count must be reinstated.

We note that Amsted does not request us to pass upon the validity of the agreement itself as between the parties to it. Amsted does argue that the fact that the release was conditioned upon dismissal of the third-party action means that no settlement agreement existed until the action was dismissed and therefore the settlement could not have provided grounds for that dismissal. However, as we have found that the agreement was not entered into in good faith, we need not discuss that issue.

APPEAL OF AMSTED AGAINST PLAINTIFF

In its appeal from the judgment in favor of the plaintiff, Amsted does not challenge its liability to him. It insists, instead, that the trial court's exclusion of certain evidence pertaining to the plaintiff's earnings after the accident was erroneous and deprived it of a fair assess-

ment by the jury of the plaintiff's damages.

At trial, the plaintiff sought recovery for lost wages between August 8, 1978, and his resumption of full-time work in February 1979. He also requested damages for the present cash value of earnings reasonably certain to be lost in the future, and the jury was so instructed, over Amsted's objection. Counsel for Amsted and for the plaintiff stipulated before the jury that the plaintiff earned $14,693.60 in 1977, the last full year before he was injured. In his answers to Amsted's interrogatories, the plaintiff stated that in 1979, he had reported a gross income of $26,974.23 and from January 1, to July 8, 1980, he had earned $16,021.23. Amsted offered to read these answers to the jury, but the offer of proof was refused on the ground that the evidence was not relevant to the plaintiff's future earning capacity.

The plaintiff contends that this evidentiary ruling was correct, because the amount of the plaintiff's earnings after his injury does not disprove that his earning capacity was diminished after the accident. However, this position has long been rejected in Illinois, which has followed the general rule that the amount of a plaintiff's earnings following an accident is admissible as probative of the plaintiff's future earning capacity. *Saldana v. Wirtz Cartage Co.* (1978), 74 Ill. 2d 379, 385 N.E.2d 664; *Hall v. Chicago & Northwestern Ry. Co.* (1955), 5 Ill. 2d 135, 125 N.E.2d 77; *Chicago Union Traction Co. v. Brethauer* (1906), 223 Ill. 521, 79 N.E. 287; *Chicago & Erie R.R. Co. v. Meech* (1896), 163 Ill. 305, 45 N.E. 290.

The plaintiff responds that, even if this evidence was erroneously excluded, it would have been merely cumulative, because, in response to cross-examination, the plaintiff admitted that he had earned more money after the accident than he had before being injured. But, this argument ignores the fact that it is the amount of those earnings, not only the existence of an increase in earnings, which is relevant and admissible. Plaintiff's admission that he earned more money after the accident cannot render evidence of the amount of those earnings cumulative.

■ Finally, the plaintiff asserts that any error committed could not have prejudiced Amsted, because the jury's verdict was supported by the evidence. We recognize that the plaintiff sought recovery for lost wages between August 1978 and February 1979, as well as for medical expenses of approximately $5,200. We also acknowledge that, due to his injury, the plaintiff was cautioned to avoid work at heights, which work constituted, in the plaintiff's estimate, 20 to 25% of his employment. Nonetheless, under the testimony introduced at trial, we

738

cannot say that the jury's verdict was unaffected by the erroneous exclusion of evidence pertaining to the plaintiff's earnings following the accident. As a result, Amsted has shown that it is entitled to a new trial on the issue of the plaintiff's damages.

CONCLUSION

The judgment in favor of the plaintiff on his complaint is affirmed insofar as it establishes Amsted's liability to him, but the award of damages is reversed and the cause is remanded for a new trial on the plaintiff's damages. The trial court's order dismissing both counts of Amsted's third-party complaint is reversed in its entirety, and that cause is remanded for further proceedings on the complaint.

Affirmed in part, reversed in part, remanded.

KARNS, P.J., and JONES, J., concur.