SEAN O'CONNOR, as Adm'r. of the Estate of John O'Connor, Deceased, *et al.*, Plaintiffs-Appellees, v. PINTO TRUCKING SERVICE, INC., a/k/a Pinto Trucking Company, a/k/a Pinto Air Freight Company, *et al.*, Defendants and Counterplaintiffs-Appellants, (Gindy Manufacturing Company, a/k/a Gindy, a/k/a The Budd Company, Defendants and Counterdefendants-Appellees).

First District (2nd Division)   No. 85—3241

Opinion filed November 18, 1986.

French, Rogers, Kezelis & Kominiarek, P.C., of Chicago (Richard G. French, Jerome M. Brooks, and Russell P. Veldenz, of counsel), for appellants.

Clausen, Miller, Gorman, Caffrey & Witous, P.C., of Chicago (James T. Ferrini, James O. Ozog, and Lisa Marco Kouba, of counsel), for appellee Gindy Manufacturing Company.

Patrick C. Keeley and David J. Boersma, both of Piccione, Kelley & Associates, Ltd., of Wheaton, for other appellees.

JUSTICE HARTMAN delivered the opinion of the court:

We are asked to review an order dismissing a countercomplaint due to certain defendants-counterdefendants having entered into a settlement agreement with plaintiffs. The issues raised include whether: (1) the circuit court erred in dismissing from the lawsuit one of the defendants-counterdefendants in light of its settlement with plaintiffs; (2) defendants-counterplaintiffs waived their appellate arguments that the settlement agreement was not in good faith; and (3) the Contribution Act (Act) (Ill. Rev. Stat. 1985, ch. 70, par. 301 *et seq.*) is unconstitutional in that it deprived defendants-counterplaintiffs of a remedy.

On May 14, 1981, John O'Connor was killed when his car crashed into the rear of a semitrailer parked on the north side of West Irving Park Road in the 8100 block. The semitrailer was manufactured by defendant-counterdefendant, Gindy Manufacturing Company (a/k/a the Budd Company) (Budd), and sold to Ryder Truck Rental (Ryder) in September 1970. In 1976 Ryder sold the trailer to Lapadola Air Freight Transfer, Inc., which, in 1977, sold it to defendant-counterplaintiff, Pinto Trucking Service, Inc. (Pinto). In 1980 Pinto sold the trailer to defendant-counterplaintiff, ATC Leasing Corp. (ATC), which in turn leased it back to Pinto.

John Szetela, also a defendant-counterplaintiff, owned the tractor which pulled the semitrailer and was responsible for having parked it, allegedly as an agent of Pinto and ATC. Defendant-counterdefendant, city of Chicago, was responsible for lighting the south half of Irving Park Road. The city limits apparently extended from the south curb only to the center of the street.

On December 29, 1982, O'Connor's widow and his estate filed suit against Pinto, Szetela, Budd, and the city. On May 13, 1983, plaintiffs filed a first amended complaint adding ATC, Ryder, and Lapadola as defendants. The complaint's first eight counts alleged various acts of negligence and wilful and wanton misconduct against Pinto, ATC, Szetela, and the city. Three additional counts sounded in strict products liability and *res ipsa loquitur* against Budd, Ryder, and Lapadola. On September 20, 1984, plaintiffs filed a second amended complaint alleging additional counts in *res ipsa loquitur* against Pinto, ATC, Szetela, and the city. The primary allegations in the complaint concerned inadequate lighting on the street, inade-

quate lighting on the parked trailer, and improper placement of the "DOT bar" (bumper) on the rear of the semitrailer. The complaint asked for in excess of $7 million in damages.

On October 12, 1984, the semitrailer manufacturer, Budd, answered the second amended complaint asserting the statute of repose as an affirmative defense, as well as comparative negligence and assumption of risk as additional affirmative defenses. Budd moved to dismiss the *res ipsa loquitur* count against it and also filed a motion for summary judgment with respect to the strict-liability count. While these motions were still pending, on April 25, 1985, plaintiffs offered to settle with Budd, Ryder, and the city for $75,000. Budd had previously offered a settlement of $5,000; however, on June 25, 1985, Budd agreed to pay $15,000 in settlement. Ryder and the city settled for smaller amounts.

On June 5, 1985, Pinto, Szetela, and ATC filed counterclaims for contribution against Budd, Ryder, and the city.

On July 1, 1985, plaintiffs dismissed their counts against Budd, Ryder, and the city in accordance with the settlement agreement. Budd, Ryder, and the city thereafter filed motions to dismiss the counterclaims, contending that the settlement was reached in good faith. On September 19, 1985, defendants-counterplaintiffs objected to the settlement contending that it was unreasonably low and entered into in bad faith. Following a hearing on October 3, 1985, the circuit court granted the dismissal of the counterclaims against Budd, Ryder, and the city and dismissed them from the action.

Defendants Pinto, Szetela, and ATC appeal the dismissal of Budd, but not of Ryder and the city.

For greater facility in understanding the positions of the various parties, we set forth the following table:

PLAINTIFFS:  ESTATE OF O'CONNOR (decedent's estate)
CATHERINE O'CONNOR (decedent's wife)

v.

DEFENDANTS:  ATC (owner/lessor of the semitrailer)
PINTO (lessee of the semitrailer)
SZETELA (operator of the semitrailer)
BUDD (GINDY) (manufacturer of the semitrailer)
RYDER (previous owner of the semitrailer)
LAPADOLA (previous owner of the semitrailer)[1]
CITY OF CHICAGO (responsible for lighting part of the street)

[1]It appears that LAPADOLA was never served with summons in the case.

*COUNTERCLAIM*
DEFENDANTS-COUNTERPLAINTIFFS: ATC (owner/lessor)
PINTO (lessee)
SZETELA (operator)
v.
DEFENDANTS-
COUNTERDEFENDANTS: BUDD (semitrailer manufacturer)
RYDER (previous semitrailer owner)
CITY OF CHICAGO
*SETTLEMENT*
PLAINTIFFS: ESTATE OF JOHN O'CONNOR
CATHERINE O'CONNOR
settled with
DEFENDANTS-
COUNTERDEFENDANTS: BUDD (manufacturer)
($15,000)
RYDER (previous owner)
($5,000)
CITY OF CHICAGO ($1,750)
*APPEAL*
APPELLANTS-DEFENDANTS-
COUNTERPLAINTIFFS: ATC (owner/lessor)
PINTO (lessee)
SZETELA (operator)
v.
APPELLEES-PLAINTIFFS: ESTATE OF O'CONNOR
CATHERINE O'CONNOR
APPELLEES-DEFENDANTS-
COUNTERDEFENDANTS: BUDD (manufacturer)

I

Pinto initially contends that the settlement between Budd and plaintiffs is invalid.

■ Public policy favors peaceful and voluntary resolutions of claims through settlement agreements (*Wasmund v. Metropolitan Sanitary District* (1985), 135 Ill. App. 3d 926, 928, 482 N.E.2d 351); therefore, the greater burden of producing clear and convincing evidence to establish the invalidity of a settlement agreement is imposed. (135 Ill. App. 3d 926, 928, 482 N.E.2d 351.) In the case *sub judice*, the settlement agreement is under attack because Pinto, under the Contribution Act, would be denied contribution from the settling defendants-counterdefendants Budd, Ryder, and the city. The protection

from contribution of parties who settle is an essential part of the statutory scheme to foster certainty and encourage good-faith settlements. *Ballweg v. City of Springfield* (1986), 114 Ill. 2d 107; *Rakowski v. Lucente* (1984), 104 Ill. 2d 317, 325, 472 N.E.2d 791; *Perez v. Espinoza* (1985), 137 Ill. App. 3d 762, 765, 484 N.E.2d 1232, *appeal denied* (1986), 111 Ill. 2d 579.

■ Section 2 of the Act (Ill. Rev. Stat. 1985, ch. 70, par. 302) creates a right of contribution between joint tortfeasors in favor of one who has paid more than his *pro rata* share as premised upon his individual culpability. (*Wasmund v. Metropolitan Sanitary District* (1985), 135 Ill. App. 3d 926, 928, 482 N.E.2d 351.) An alleged tortfeasor who settles with a claimant in good faith, however, is discharged from all contribution liability. Ill. Rev. Stat. 1985, ch. 70, par. 302(d); *Wasmund v. Metropolitan Sanitary District* (1985), 135 Ill. App. 3d 926, 928-29, 482 N.E.2d 351; *LeMaster v. Amsted Industries, Inc.* (1982), 110 Ill. App. 3d 729, 734, 442 N.E.2d 1367.

The fact that a settlement agreement is advantageous to a party is not necessarily an indicium of bad faith. (*Pell v. Victor J. Andrew High School* (1984), 123 Ill. App. 3d 423, 435, 462 N.E.2d 858, *appeal denied* (1984), 101 Ill. 2d 567.) In considering whether the sum actually paid in settlement is disproportionate to the *ad damnum* of the complaint, the court may also consider both the probable recovery and the possibility of an unexpected result. (*Wasmund v. Metropolitan Sanitary District* (1985), 135 Ill. 2d 926, 930, 482 N.E.2d 351; *Barreto v. City of Waukegan* (1985), 133 Ill. App. 3d 119, 129, 478 N.E.2d 581.) An ensuing jury verdict is not necessarily a fair measure of the good faith of a settlement. (*Lowe v. Norfolk & Western Ry. Co.* (1984), 124 Ill. App. 3d 80, 94, 463 N.E.2d 792.) In sum, the amount of a settlement is but one factor to consider since damages are often speculative and the probability of legal liability is frequently uncertain, and the amount of a settlement may be far different from any damage amount which might eventually result from full litigation. *Perez v. Espinoza* (1985), 137 Ill. App. 3d 762, 766, 484 N.E.2d 1232; *Barreto v. City of Waukegan* (1985), 133 Ill. App. 3d 119, 129, 478 N.E.2d 581.

■ In the instant case, plaintiff administrator originally prayed for more than $7 million. He then made a settlement offer of about $550,000, of which slightly more than $100,000 was identified as Budd's liability. He subsequently conceded that the recovery could be reduced by 30% due to decedent driver's own negligence and finally offered to settle for $75,000 with Budd, Ryder, and the city. Budd then offered to pay as its share $15,000, up $10,000 from the sum it previously offered, which was accepted. In light of the status of the

lawsuit and pleadings, and of the ensuing negotiations, the settlement does not appear disproportionate. We must conclude from the foregoing that defendants-counterplaintiffs have failed to prove an absence of good faith in the settlement by clear and convincing evidence. *Wasmund v. Metropolitan Sanitary District* (1985), 135 Ill. App. 3d 926, 928, 482 N.E.2d 351.

■■ The compromise of a disputed claim can provide the requisite consideration for a settlement agreement, but where the claim is questionable, its compromise nevertheless will support a settlement agreement asserted in good faith. (*LeMaster v. Amsted Industries, Inc.* (1982), 110 Ill. App. 3d 729, 735, 442 N.E.2d 1367.) A disputed claim which is entirely without foundation, however, cannot support a good-faith settlement since the claimant knew or should have known that the claim could not prevail. In the present case, Budd's motion for summary judgment as to the count against it sounding in products liability on the ground that it was barred by the applicable statute of repose (Ill. Rev. Stat. 1985, ch. 110, par. 13–213(b)) was seriously opposed by plaintiff and was unresolved at the time of settlement, as was the motion to dismiss the negligence count. Further, the remaining count sounding in *res ipsa loquitur* and negligence was not time barred.

■■ Plaintiff administrator and defendants-counterdefendants Budd, Ryder, and the city assert that defendants-counterplaintiffs have waived their rights to challenge the good faith of the settlement agreement based upon the asserted applicability of the statue of repose. In oral argument, counsel for all interested parties were asked whether the good-faith issue based upon that statute was ever raised in the circuit court by defendants-counterplaintiffs and were asked to supply record references demonstrating that fact. The written responses, and the record, reveal that no such argument was raised by ATC, Pinto, or Szetela as evidence of bad faith in reaching the settlement and, therefore, must be deemed waived on appeal. *Cosentino v. Price* (1985), 136 Ill. App. 3d 490, 494-95, 483 N.E.2d 297, *appeal denied* (1986), 111 Ill. 2d 566; *Tomaso v. Plum Grove Bank* (1985), 130 Ill. App. 3d 18, 25-26, 473 N.E.2d 588; *G & W Electric Co. v. Joslyn Manufacturing & Supply Co.* (1984), 127 Ill. App. 3d 44, 47, 468 N.E.2d 449.

The preceding discussion, coupled with the fact that the settlement with plaintiff administrator also compromised the remaining second count claiming the right to recover on the theory of *res ipsa loquitur*, entirely separate and apart from the products liability count of the complaint, compels the conclusion that there is no basis upon which to disturb the circuit court's decision in this case.

## II

■ Defendants-counterplaintiffs assert as their final argument that their constitutional right to a remedy has been usurped, citing article I, section 12, of the 1970 Illinois Constitution. We disagree. There is always the possibility, of course, that a party who declines to participate in a good-faith settlement will find himself, or as here, with others, facing the trier of fact without benefit of the other parties from whom he or they may seek contribution. Even so, such a nonsettling defendant receives a remaining statutory remedy under the Act, which permits him to claim as a setoff any amount which a plaintiff may have recovered in the antecedent settlement. (Ill. Rev. Stat. 1985, ch. 70, par. 302(c).) We find no unconstitutional deprivation of remedy under this statutory provision.

For the foregoing reasons, the judgment of the circuit court of Cook County must be affirmed.

Affirmed.

BILANDIC, P.J., and STAMOS, J., concur.