Andrew **JOHNSON**, Plaintiff,

v.

**JACK B. KELLEY, INC.**, a corporation, and **Aden Safety/Airco**, a corporation, Defendants.

**No. 86 C 4904.**

United States District Court, N.D. Illinois, E.D.

July 6, 1987.

John C. Mullen, Christopher Mullen, Mary R. Minella, Noah Walker, Mullen & Minella, Chicago, Ill., for plaintiff.

Richard M. Hittle, Keevers & Hittle, Chicago, Ill., for third-party defendants.

Hilary T. Scantlebury, William F. McDermott, Law Offices of H.T. Scantlebury, Chicago, Ill., for third-party plaintiff Barry A. Robin.

Donald B. Hilliker, Mark J. McAndrew, Phelan Pope & John Ltd., Chicago, Ill., Richard H. Albert, Air Products & Chemicals, Inc. Law Dept., Allentown, Pa., for defendants.

## MEMORANDUM OPINION AND ORDER

WILLIAM T. HART, District Judge.

Plaintiff Andrew Johnson brought this action seeking to recover for injuries sustained when a helium tank exploded in the course of his employment with certain divisions of the BOC Group, Inc. ("BOC"). Plaintiff seeks to recover from the owner of the helium tank, Jack B. Kelley, Inc. ("Kelley") and the tank's manufacturer, Gardner Cryogenics ("Gardner") on theories of strict liability and negligence. Plaintiff also seeks to recover against Jackson Products, Inc. ("Jackson"), the manufacturer of the safety glasses he was wearing at the time of the accident. Defendants Gardner and Jackson have brought third-party negligence claims against BOC alleging that BOC improperly altered the helium tank and failed to train and supervise plaintiff in the proper procedures for repressurizing the tank.

Settlement negotiations were had, and plaintiff made an initial demand of $450,000 from all defendants plus a waiver of worker's compensation benefits. In negotiations between the potential defendants, BOC offered to contribute $186,000, an additional worker's compensation benefit of $64,000, a subrogation waiver of the $64,000, a subrogation waiver of amounts already paid of approximately $26,000, as well as certain medical expenses. Gardner offered $10,000 toward a settlement package, Jackson offered $5,000, and Kelley offered nothing. Plaintiff rejected this offer, but agreed to accept BOC's offer.

Thus, pursuant to a settlement agreement between plaintiff and BOC, for $186,000 plus the waiver of certain liens and subrogation rights, BOC was released from any claims plaintiff may have had against it. All defendants were advised of this settlement. Defendants Kelley and Gardner agreed between themselves that Gardner would defend and indemnify Kelley, and Gardner's counsel has substituted for Kelley by order of court.

BOC has now moved to dismiss the third-party actions brought against it by Gardner and Jackson on the basis that the settlement agreement it entered into with plaintiff constitutes a good faith settlement under the Illinois Contribution Among Joint Tortfeasors Act, Ill.Rev.Stat. (1986), ch. 70, §§ 301 et seq., thus discharging it from liability for contribution. For the reasons stated below, BOC's motion is granted.

## DISCUSSION

Section 2 of the Illinois Contribution Among Joint Tortfeasors Act provides, in pertinent part:

(a) Except as otherwise provided in this Act, where 2 or more persons are subject to liability in tort arising out of the same injury to person or property, or the same wrongful death, there is a right of contribution among them, even though judgment has not been entered against any or all of them.

(b) The right of contribution exists only in favor of a tortfeasor who has paid more than his pro rata share of the common liability, and his total recovery is limited to the amount paid by him in excess of his pro rata share. No tortfeasor is liable to make contribution beyond his own pro rata share of the common liability.

(c) When a release or covenant not to sue or not to enforce judgment is given in good faith to one or more persons liable in tort arising out of the same injury or the same wrongful death, it

does not discharge any of the other tort-feasors from liability for the injury or wrongful death unless its terms so provide but it reduces the recovery on any claim against the others to the extent of any amount stated in the release or the covenant, or in the amount of the consideration actually paid for it, whichever is greater.

(d) The tortfeasor who settles with a claimant pursuant to paragraph (c) is discharged from all liability for any contribution to any other tortfeasor.

Ill.Rev.Stat. (1986), ch. 70, § 302. The Contribution Act can thus be viewed as an attempt to provide a statutory scheme for the equitable distribution of fault. BOC claims that, by reason of the settlement it entered into with plaintiff, it is discharged from liability for contribution to all joint tortfeasors, including Gardner and Jackson.

Gardner and Jackson contend that the settlement agreement was not entered into in "good faith," as the Contribution Act requires, and thus, that their claims against BOC for contribution are not barred. In support of their argument, Gardner and Jackson rely on the decision of the Illinois appellate court in *LeMaster v. Amsted Industries, Inc.*, 110 Ill.App.3d 729, 66 Ill.Dec. 454, 442 N.E.2d 1367 (5th Dist.1982). In *LeMaster*, the court held that a settlement agreement entered into between a claimant and his employer did not constitute a good faith settlement under the Contribution Act because the claimant retained no cause of action outside of the Worker's Compensation statute which he could relinquish in return for the agreement. The court reasoned:

As in all contracts, consideration is the quiddity which binds the parties to a settlement agreement.... If a good faith settlement under the Contribution Act must be supported by consideration and if consideration consists of the compromise of a claim which is asserted in good faith, the question again becomes whether the plaintiff's assertion of tort claims against [the employer] could be made in good faith.

*Id.*, 66 Ill.Dec. at 459, 442 N.E.2d at 1372. The court concluded that, as between the claimant and his employer, "an equitable bargain was simply not entered into," and thus that the settlement agreement did not bar a third-party action for contribution against the employer. *Id.*

Gardner and Jackson argue that this court should follow the Illinois appellate court's decision in *LeMaster* and find that, because BOC was immune from tortious liability to plaintiff due to the exclusivity of the Worker's Compensation statute, the settlement was not made in good faith and could not serve to discharge their third-party claims against BOC. Since the Illinois Supreme Court has not decided this issue, however, this court's duty is to predict what rule that court would adopt if faced with the question. *Harris v. Karri-on Campers, Inc.*, 640 F.2d 65, 68 (7th Cir. 1981); *UNR Industries, Inc. v. Continental Insurance Co.*, 607 F.Supp. 855, 863 (N.D.Ill.1984). Here, certain decisions of the Illinois Supreme Court subsequent to the appellate court's decision in *LeMaster* lead this court to conclude that the *LeMaster* approach may no longer be viable and should not be followed in this case.

In *Doyle v. Rhodes*, 101 Ill.2d 1, 77 Ill.Dec. 759, 461 N.E.2d 382 (1984), the Illinois Supreme Court held that an employer could be subject to liability as a joint tortfeasor notwithstanding the Worker's Compensation statute's bar to suits initiated by an employee directly against the employer. The court stated that "[t]he intent of the Contribution statute was to reach anyone who was culpable, regardless of whether they have been immunized from a direct tort action by some special defense or privilege." *Id.* 77 Ill.Dec. at 763, 461 N.E.2d at 386. Thus, in this case, although BOC has not been sued by plaintiff, there is no question that it could be subject to liability as a joint tortfeasor under the Contribution Act. Given this, the consideration it gave for the settlement with plaintiff cannot be said to have been illusory. While *Doyle* did not specifically address the issue of what constitutes a good faith settlement between a plaintiff and an employer, its conclusion that an employer may

be "subject to liability in tort" within the meaning of the Contribution Act, despite the potential defense of the Worker's Compensation statute, clearly undercuts the conclusion of *LeMaster*.

In *Ballweg v. City of Springfield*, 114 Ill.2d 107, 102 Ill.Dec. 360, 499 N.E.2d 1373 (1986), the reasoning of *LeMaster* was still further implicitly undercut by the Illinois Supreme Court. In *Ballweg*, the court rejected the argument that, because the plaintiff's cause of action against one defendant would have been barred by the statute of limitations at the time a settlement with that defendant was entered into had the defense been raised, it lacked consideration and did not thus constitute a good faith settlement as required by the Contribution Act. The court noted that, under *Doyle*, the potential for tort liability exists until the defense is established, and also emphasized the public policy encouraging the settlement of claims. " 'If we were now to add limitations not expressed in the general language of the settlement instrument or in the provisions of the Contribution Act, we would make those who desire to end litigation wary and uncertain of what they would accomplish by settlement.' " *Id.* 102 Ill.Dec. at 367, 499 N.E.2d at 1380, *quoting Rakowski v. Lucente*, 104 Ill.2d 317, 325, 84 Ill.Dec. 654, 658, 472 N.E.2d 791, 795 (1984).

Other decisions of the Illinos appellate courts subsequent to *LeMaster*, and following the Illinois Supreme Court's analyses in *Doyle* and *Ballweg*, likewise suggest that *LeMaster* may no longer be entirely viable. In *Doellman v. Warner & Swasey Co.*, 147 Ill.App.3d 842, 101 Ill.Dec. 366, 498 N.E.2d 690 (1st Dist.1986), for example, the court, in upholding a good faith settlement between the plaintiff and one defendant as a bar to contribution to nonsettling defendants, stated:

> *LeMaster*'s determination that an employer is not a party 'liable in tort' because of the exclusivity provisions of the workers' compensation act was rejected by the Illinois supreme court in *Doyle* .... There the court held that employers were parties potentially liable in tort for an employee's injuries. Plaintiff's

release must therefore have had value in *LeMaster*, and had value herein; it thus constituted ample consideration to bind the parties to the release, and its acceptance constituted a good-faith settlement as between appellee and plaintiff.

*Id.* 101 Ill.Dec. at 372, 498 N.E.2d at 696. Similarly, in *O'Connor v. Pinto Trucking Service, Inc.*, 149 Ill.App.3d 911, 103 Ill. Dec. 242, 501 N.E.2d 263 (1st Dist.1986), the court stated that while a disputed claim which is entirely without foundation cannot support a good faith settlement, "where the claim is questionable, its compromise nevertheless will support a settlement agreement asserted in good faith." *Id.* 103 Ill.Dec. at 246, 501 N.E.2d at 267. The court stressed that "[t]he protection from contribution of parties who settle is an essential part of the statutory scheme to foster certainty and encourage good faith settlements." *Id.* 103 Ill.Dec. at 245, 501 N.E.2d at 266.

Similar to the result in *Doyle*, the Illinois appellate courts have recently held that the parent-child and interspousal tort immunities do not suffice to bar actions for contribution against members of a plaintiff's family. This is significant because the approach taken in *LeMaster* would invalidate, for purposes of the Contribution Act, any settlement and release agreement entered into between a plaintiff and a family member who had been identified as a joint tortfeasor. Thus, these family members would join employers as part of a group who could be "subject to liability in tort" under the Contribution Act, but at the same time incapable of validly exercising the Contribution Act's provision for executing a settlement with the plaintiff in order to finalize and extinguish their involvement in the litigation. It seems unlikely that the Illinois Supreme Court, if faced with this question, would countenance such an incongruous result. As the court stated in *O'Connor*, "[p]ublic policy favors peaceful and voluntary resolutions of claims through settlement agreements; ... therefore, the greater burden of producing clear and convincing evidence to establish the invalidity of a settlement agreement is im-

posed." *O'Connor, supra* 103 Ill.Dec. at 245, 501 N.E.2d at 266.

As the Illinos Supreme Court noted in *Doyle,* a primary purpose envisioned by the Contribution Act was to have all tortfeasors, regardless of their relationship to the plaintiff, ultimately involved in resolving all conflicts which arise as a result of injuries. However, if this were all that the legislature intended to accomplish with the Contribution Act, the Act itself would consist only of Section 2(a), which establishes a cause of action among those persons "subject to liability in tort." Ill.Rev.Stat. (1986), ch. 70, § 302(a). Instead, the legislature also included language discussing the effect of settlements between the claimant and other tortfeasors. This legislative directive reinforces the importance of enabling parties to resolve conflicts without litigation. Section 2(d), Ill.Rev.Stat. (1986), ch. 70, § 302(d), which discharges any tortfeasor who settles with the claimant from liability to any other tortfeasor, provides a significant incentive for settlement, since any party who refuses to become involved in settlement negotiations risks becoming a sole defendant at trial if all other tortfeasors settle their disputes with the claimant. The approach taken in *LeMaster* completely abrogates the policy of providing an incentive to settlement which underlies the language of the Contribution Act and which has been recognized as paramount in more recent Illinois decisions. *See, e.g., O'Connor, supra; Ballweg, supra; Doellman, supra.*

This court is, of course, mindful that the entire circumstances surrounding a settlement must be taken into account. *Ballweg, supra* 102 Ill.Dec. at 367, 499 N.E.2d at 1380. However, once there has been a preliminary showing that a good faith settlement has been made, the burden of proof on the issue of the good faith of the settling party shifts to the party who claims that the settlement was not made in good faith or is collusive. *Barreto v. City of Waukegan,* 133 Ill.App.3d 119, 88 Ill. Dec. 266, 478 N.E.2d 581 (2d Dist.1985). *See also Perez v. Espinoza,* 137 Ill.App.3d 762, 92 Ill.Dec. 377, 484 N.E.2d 1232 (1st Dist.1985); *Wasmund v. Metropolitan Sanitary Dist.,* 135 Ill.App.3d 926, 90 Ill. Dec. 532, 482 N.E.2d 351 (1st Dist.1985).

Gardner and Jackson attempt to distinguish *Ballweg, Doellman* and *O'Connor* on the basis that, in those cases, joint settlements had been entered into between the plaintiffs, defendants, and third-party defendants, whereas in this case, BOC, who was not even named as a defendant, effectuated a settlement with plaintiff directly. Because plaintiff settled with BOC solely and directly, they argue, there has been no true apportionment of liability among tortfeasors as is contemplated by the Contribution Act. However, both Gardner and Jackson were indisputably aware of the settlement between plaintiff and BOC at the time it was entered into, having previously participated in settlement negotiations themselves. In view of the fact that these parties were aware of settlement conferences and were given an opportunity to settle but chose not to do so, BOC's settlement with plaintiff directly cannot be said to have collusive or other than in "good faith." *See Barreto, supra* 88 Ill.Dec. at 268, 478 N.E.2d at 583. In addition, the court notes that BOC also attempted to negotiate a settlement with defendant Kelley, but that Gardner agreed to hold harmless, indemnify and compensate Kelley for attorney's fees, thus apparently preventing such a settlement.

■ Gardner and Jackson also contend that barring their third-party claims against BOC constitutes an usurpation of their constitutional right to a remedy under Article I, § 12 of the Illinois Constitution, and subjects them to liability in excess of their fair share, but this very argument was properly rejected in *O'Connor, supra* 103 Ill.Dec. at 247, 501 N.E.2d at 268. The ultimate purpose of the Contribution Act is to provide a means whereby all parties bear responsibility for their pro rata culpability when an injury occurs. If the amount provided by BOC in settlement was inadequate relative to its potential pro rata culpability, the agreement would still be subject to challenge on that basis as not constituting a "good faith" settlement within the meaning of the Contribution

Act. As previously noted, however, Gardner and Jackson have raised no direct challenge to the *amount* BOC agreed to in settlement with plaintiff. Gardner and Jackson are also protected from excessive liability by Section 2(c) of the Contribution Act, which permits notsettling defendants to claim a set-off for any amounts recovered by the claimant through previous settlement with another tortfeasor. Ill.Rev. Stat. (1986), ch. 70, § 302(c). *See id.*

This court thus finds that there was consideration for the settlement agreement between plaintiff and BOC, that the settlement agreement was entered into in good faith, and that BOC is entitled to the protection of the discharge provision of Section 2(d) of the Contribution Act, Ill.Rev. Stat. (1986), ch. 70, § 302(d). A contrary result would "allow one litigant to hold others hostage to its own intransigence," and "would take from ... those in [BOC's] position the ability to settle their own cases, and ... rather effectively place veto power over any settlement in the hands of the hardest bargainer, permitting settlement only where all the parties had agreed as to their respective liabilities." *Doellman, supra* 101 Ill.Dec. at 373, 498 N.E.2d at 697.

IT IS THEREFORE ORDERED that defendant BOC's motion to dismiss the third-party claims of defendants Gardner and Jackson is granted.