LEE ARTOE, Plaintiff-Appellant, *v.* NAVAJO FREIGHT LINES, INC., *et al.*, Defendants-Appellees.

First District (5th Division)   No. 77-1369

Opinion filed October 13, 1978.

Lee Artoe, of Chicago, for appellant, *in propria persona.*

William R. Quinlan, Corporation Counsel, of Chicago (Daniel Pascale and Henry Phillip Gruss, Assistant Corporation Counsel, of counsel), for appellees Raymond J. Kunkel, P. Mannion, and Terrence Pierce.

Garbutt, Jacobson & Lee, Associated, of Chicago (Patrick J. Callahan, of counsel), for appellees Navajo Freight Lines, Inc., Raymond Brown, John Frawley, and Lee's Towing Service.

Mr. JUSTICE MEJDA delivered the opinion of the court:

Plaintiff appeals from an order entered on June 22, 1977. The order both denied the plaintiff's motion to vacate the court's order of May 26, 1977, which dismissed all remaining defendants except Lee's Towing Service and allowed Lee's Towing Service's motion for dismissal pursuant

to section 48(1)(f) of the Civil Practice Act. (Ill. Rev. Stat. 1975, ch. 110, par. 48(1)(f).) The issues on appeal are whether the orders of dismissal of May 26, 1977, and June 22, 1977, were properly allowed. We affirm. The pertinent facts are as follows.

Plaintiff claims to be the owner of a building at 1241-1243 West Belmont Avenue in Chicago. There is a building to the west of plaintiff's building at 1245-1247 West Belmont Avenue and vacant land to the west of the 1245-1247 building. Plaintiff claims to own, lease or control this vacant land. He states that on May 21, 1974, he parked two of his automobiles on the vacant land and that unknown defendants had his cars ticketed. He further states that defendants falsely accused him of disturbing the peace and had him arrested. He also alleges that Lee's Towing Service removed his two cars from the vacant lot.

The next day, May 22, 1974, plaintiff filed a four-count complaint and a jury demand naming Navajo Freight Lines, Inc. (Navajo), Raymond Brown, John Frawley, police officers Kunkel, Pierce and Mannion, unknown signers of parking complaints and unknown owners of Lee's Towing Service as defendants. Count I alleged false imprisonment against all defendants. Count II alleged that Officers Mannion and Pierce and unknown signers of a traffic complaint had affixed traffic summons to plaintiff's two cars on the vacant lot without cause to believe a violation had occurred. Count III alleged trespass against Lee's Towing Service. Count IV alleged basically the same cause as count I. This complaint was stricken for failure to state a cause of action. The first amended complaint was also stricken.

In the second amended complaint, plaintiff added Monticello Realty Corporation (Monticello), Core Metal Products Co. (Core), Kaman Tool Corporation (Kaman), The American National Bank and Trust Company, as trustee (Bank), police officers K. Keeler and M. Siles, Ron Roderweiss and Thomas J. Brouder as defendants. From a memorandum attached to plaintiff's motion to vacate the order of May 26, 1977, plaintiff alleges that the Bank was the trustee for an unknown beneficiary in the building located at 1245-1247 West Belmont, immediately west of plaintiff's building. Monticello was the managing agent for this building and Brouder was an employee of Monticello. Core and Kaman were the tenants of the 1245-1247 building on May 21, 1974. As to these newly added defendants, plaintiff alleged Roderweiss, Kaman and Monticello were liable with Mannion and Pierce for falsely ticketing his cars on May 21, 1974. In addition, he alleged that Brouder, in his own behalf, and/or as agent for Monticello and/or the Bank, called defendant Siles who ticketed plaintiff's car on September 6, 1974, and defendant Keeler who ticketed plaintiff's car on September 10, 1974. Plaintiff also alleged harm to his automobile was caused by Core, Kaman, Monticello and the Bank,

when they caused debris to be deposited on the car over a four-month period. Count III alleged the false imprisonment against the original defendants. Count IV alleged slander by Navajo, Brown, Frawley, Kunkel, Mannion, Pierce, Roderweiss, Core, Kaman and Monticello apparently from the events of May 21, 1974. This second amended complaint was also stricken.

A third amended complaint was filed adding two new counts for negligence and abuse of process but omitting allegations regarding the ticketing of September 6 and September 10, 1974, and the depositing of debris on plaintiff's car by defendants. The complaint also omitted Siles, Keeler, Kaman, Core and Brouder as defendants. This complaint was amended by a fourth amended complaint to cite the statutorily required service of notice to the City of Chicago. Ill. Rev. Stat. 1973, ch. 85, par. 8—102.

At about this time, plaintiff claims he purchased the beneficial interest in the building at 1245-1247 West Belmont from the Bank and felt that any question of liability on the part of the Bank, Monticello or Brouder was moot. On January 6, 1976, he signed a sealed instrument releasing the Bank, Monticello and Brouder from all liability in this cause of action. A stipulated order of dismissal with prejudice, incorporating this release, was entered February 5, 1976, dismissing the released parties and Core and Kaman, the tenants of the purchased property.

Plaintiff later withdrew his fourth amended complaint and filed a fifth amended complaint which was stricken as to form. A sixth amended complaint was filed containing six counts and alleged causes of action against the remaining defendants for false imprisonment, malicious prosecution, abuse of process, trespass, negligence and slander, all based on the events of May 21, 1974. All defendants filed answers to this complaint except Roderweiss who moved to be dismissed pursuant to section 48(1)(f) of the Civil Practice Act. (Ill. Rev. Stat. 1975, ch. 110, par. 48(1)(f).) Roderweiss based his motion on the ground that all defendants in this action had been named as joint tortfeasors and that the release of the Bank, Monticello, and Brouder by plaintiff on January 6, 1976, released all joint tortfeasors. The other defendants except Lee's Towing Service moved to withdraw their answers and joined in Roderweiss' motion for dismissal. Plaintiff filed an answer to this motion contending that all defendants were not joint tortfeasors but were liable for their separate and independent acts. After responses by all parties and a hearing, an order dismissing with prejudice all defendants except Lee's Towing Service was entered on May 26, 1977. A motion by plaintiff to vacate this order of dismissal and a concurrent motion by Lee's Towing Service for its dismissal based on the release were heard. Plaintiff's motion to vacate the order of May 26 was denied, and Lee's Towing Service's motion for

dismissal with prejudice was allowed. The trial court found the release to be a general release which discharged all defendants alleged to have been joint tortfeasors. Plaintiff then brought a timely appeal.

OPINION

■■ At the outset we note one defendant, Ron Roderweiss, has not filed a brief in this appeal. This does not require automatic reversal of the trial court's order of his dismissal, however. As indicated in *First Capitol Mortgage Corp. v. Talandis Construction Corp.* (1976), 63 Ill. 2d 128, 345 N.E.2d 493, where the record is simple and the claimed errors are such that an appellee's brief is unnecessary, a court of review should decide the merits of the appeal. This is especially true here since all the issues on appeal are adequately briefed by the other defendants-appellees. In view of this we proceed to determine the merits of the appeal for all parties.

■■ The plaintiff does not challenge the validity of the release executed by him on January 6, 1976. The release was under seal and recited that it was made "for and in consideration of good and valuable considerations." A release for a consideration is conclusively presumed to be given in full satisfaction of the injury. (*Witek v. Leisure Technology Midwest, Inc.* (1976), 39 Ill. App. 3d 637, 640; 350 N.E.2d 242, 245.) "A release, in essence, is the abandoning of a claim to the person against whom the claim exists and where the release is executed with knowledge of its meaning, causes of action covered by the release are barred." (*Ogren v. Graves* (1976), 39 Ill. App. 3d 620, 622, 350 N.E.2d 249, 251.) Since plaintiff does not make any claim of fraud or invalidity as to the release, the question is what causes of action did he release.

The pertinent portion of the instrument reads:

> "* * * Lee Artoe hereby releases and forever discharges The American National Bank and Trust Company of Chicago, Trust No. 27391, Monticello Realty Corporation, an Illinois corporation, and Thomas Brouder, * * * from all manner of actions, cause, and causes of action, suits, debts, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, controversies, agreements, promises, variances, trespasses, damages, judgments, executions, claims and demands, whatsoever, in law or in equity, and particularly, without limiting the generality of the foregoing, all claims made by Lee Artoe in that certain law suit known as *Lee Artoe vs. Navajo Freight Lines, et al.*, Case No. 74 L 8001, in the Circuit Court of Cook County * * *."

What is included in "all manner of actions, cause, and causes of action"? In the case of *Pierog v. H. F. Karl Contractors, Inc.* (1976), 39 Ill. App. 3d 1057, 351 N.E.2d 249, the court defined cause of action for purposes of *res*

*judicata.* That definition would be applicable to the question of what is precluded by a release since the inquiry in both cases is what elements or actions are barred in a subsequent proceeding by a prior release or determination of the court. In that case the court said:

"A cause of action consists of a single group of facts which gives the plaintiff a right to seek redress for a wrong done by the defendant by which that right has been violated. [Citations.] The test generally employed to determine identity of causes of action for *res judicata* purposes is whether the evidence needed to sustain the second action would have sustained the first action. [Citations.] The identity of the causes of action may be determined from the record as well as from the pleadings found in both actions. [Citations.] Although a single group of operative facts may give rise to the assertion of different kinds of relief, or different theories of recovery, it is still a single cause of action. [Citations.]" 39 Ill. App. 3d 1057, 1060-61, 351 N.E.2d 249, 252-53.

It is clear that all of plaintiff's claims in this case arose from a single group of facts, namely his arrest, the ticketing and towing of his cars, and the alleged slander made at that time. The six counts in his fourth amended complaint (the last complaint prior to the release) were all based on the single group of operative facts that occurred on May 21, 1974. The counts demanded different kinds of relief based on different theories of recovery but all stemmed from a single cause of action. Basically plaintiff sought relief from harm to his reputation and damage to his property which was caused during a short time period on May 21, 1974.

His theories of recovery for the damage to his good name included false imprisonment, malicious prosecution, abuse of process, and slander. The theories for recovery on the property damage were trespass and negligence. All these alleged injuries were the result of a single group of facts or occurrences and although redress could be sought under a variety of theories, there was in fact a single cause of action.

Further, the prayer for relief in each of the six counts demanded "judgment against defendants, and each of them" and did not separate or exclude any defendants from any of the counts. By releasing the Bank, Monticello, and Brouder from all "causes of action" it is clear that plaintiff released those parties from any liability on all six counts of the fourth amended complaint and had abandoned his cause of action on all theories.

■■ It is well established in Illinois that a full release of one indivisible injury to any of those concurring in its cause releases both joint and independent concurrent tortfeasors. (*Manthei v. Heimerdinger* (1947), 332 Ill. App. 335, 75 N.E.2d 132; *Witek v. Leisure Technology Midwest,*

*Inc.* (1976), 39 Ill. App. 3d 637, 350 N.E.2d 242.) The reason for this rule was given in *Manthei* (332 Ill. App. 335, 350) as follows:

"It is an ancient doctrine that a release to one joint trespasser, or a satisfaction from him, discharges the whole. The same doctrine applies to all joint torts, and to torts for which the injured party has an election to sue one or more parties severally * * *. If it were not so, a party having a claim against several persons on account of a single tort might sue one and settle the suit, receiving damages; he might then sue another and settle in the same way, and repeat the proceeding as to all but one, and then sue him and recover the whole damage, as if nothing had been paid by the others. A door would thus be opened to a class of speculations that do not deserve encouragement. The rule of law which makes one satisfaction or release a bar to further claims for the same tort is founded in good reason."

Whether the release of the Bank, Monticello, and Brouder released the other defendants depends on whether or not all parties were joint or concurrent tortfeasors causing one injury.

Plaintiff contends that he sued each defendant for his individual acts of tortious conduct and that the conduct of the released defendants was not connected with that of the remaining defendants. However, an examination of the fourth amended complaint reveals that plaintiff sued the defendants jointly demanding relief against "defendants, and each of them" in the prayer for relief of every count. Since plaintiff sought to hold each defendant liable for the injuries alleged in each count, it is clear that plaintiff pleaded them as joint or concurrent tortfeasors. He did not allege separate injuries against individual defendants until the fifth amended complaint. Therefore a release of any party named in the fourth amended complaint would serve as a release of all other defendants.

Even if the different injuries (cars, reputation, business, etc.) were to be considered different causes of action arising from separate facts, by releasing parties who had been named in each separate cause, the plaintiff released all other defendants whom he sought to hold for those injuries.

Plaintiff relies on the rule that

"* * * a release to, or the receipt of money from, a tort feasor who is not in fact liable with another will not discharge such other, where the respective tort feasors have committed separate and distinct offenses against or inflicted separate and distinct injuries upon the plaintiff." *Tidwell v. Smith* (1960), 27 Ill. App. 2d 63, 72, 169 N.E.2d 157, 162.

He contends that whether the parties are actually joint or concurrent tortfeasors is a question of fact, and since he had made a timely jury demand, that fact question should have been decided by a jury. In

addition, he claims that no evidence was introduced by defendants to show any relationship between the released parties and the remaining defendants. Section 48 of the Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 48(1)(f)), provides, so far as pertinent, that:

"(1) Defendant may, within the time for pleading, file a motion for dismissal of the action or for other appropriate relief upon any of the following grounds. If the grounds do not appear on the face of the pleading attacked the motion shall be supported by affidavit:

\* \* \*

(f) That the claim or demand set forth in the plaintiff's pleading has been released, \* \* \*.

\* \* \*

(3) If, upon the hearing of the motion, the opposite party presents affidavits or other proof denying the facts alleged or establishing facts obviating the grounds of defect, the court may hear and determine the same and may grant or deny the motion. If a material and genuine disputed question of fact is raised the court may decide the motion upon the affidavits and evidence offered by the parties, or may deny the motion without prejudice to the right to raise the subject matter of the motion by answer *and shall so deny it if the action is one at law and a jury demand has been filed by the opposite party in apt time.*" (Emphasis added.)

The issue is: is there a material and genuine disputed issue of fact as to whether the released parties and the remaining defendants were joint or concurrent tortfeasors. We think there is not.

■ A motion to dismiss admits facts well pleaded but not conclusions of law or conclusions of facts unsupported by allegations of specific facts upon which such conclusions rest. (*Consolidated Construction Co. v. Great Lakes Plumbing & Heating Co.* (1967), 90 Ill. App. 2d 196, 206, 234 N.E.2d 378, 384; *Pennington v. Jones* (1977), 46 Ill. App. 3d 65, 67, 360 N.E.2d 566, 567.) Pleadings are construed most strongly against the pleader, but facts well pleaded must be taken as true. (*Consolidated Construction Co.*, at 206; *Pennington*, at 67.) Although an amended complaint supersedes all prior complaints and ceases to be part of the record (*Wright v. Risser* (1937), 290 Ill. App. 576, 8 N.E.2d 966), we feel a previous complaint can be considered to determine the scope of a release made while that pleading was effective. In the fourth amended complaint, plaintiff alleged specific facts upon which a conclusion that all defendants were liable as joint or concurrent tortfeasors could rest. For purposes of the motion to dismiss, the trial court was to consider these factual allegations as true. Since the release was broad and all-inclusive and did release several of the alleged concurrent tortfeasors, the trial

court could properly conclude that all defendants were joint or concurrent tortfeasors and plaintiff, having received his one full satisfaction, had released all defendants.

■■ Plaintiff cites *Tidwell v. Smith* (1960), 27 Ill. App. 2d 63, 169 N.E.2d 157, to support his position. In that case, plaintiff brought an action for assault against one doctor, the hospital and the anesthesiologist because of an unconsented surgery. Plaintiff had executed a release of another doctor, not named in the suit, for consideration. The defendant doctor then moved under section 48(f) for dismissal. His theory was that since the released doctor had participated in the operation as assisting surgeon, he was of necessity a joint tortfeasor and the release of that doctor released the defendant doctor. The court held that whether the released doctor and the defendant doctor were concurrent tortfeasors in a single injury was a material and genuine disputed question of fact. Since a jury demand had been made the court was required to deny the section 48 motion for dismissal. The facts of the instant case are distinguishable. In *Tidwell*, the court noted that the release was of a doctor who was not named as a defendant and that the release did not mention the defendants in the suit. The plaintiff had never claimed the defendant and released party were joint or concurrent tortfeasors and had maintained that the released party had nothing to do with the defendant's tortious action. Without any pleading or admission by the plaintiff alleging joint or concurrent liability, it is clear that there was a genuine issue of fact as to whether the defendant and the released party, a stranger to the suit, were joint or concurrent tortfeasors. In that case the question was properly left for a jury to decide. In the present case plaintiff alleged that all parties were joint or concurrent tortfeasors. The parties released were named as defendants and the release specifically referred to the plaintiff's lawsuit, Lee Artoe v. Navajo Freight Lines, et al., case No. 74 L 8001. If the allegations of the complaint naming defendants as joint or concurrent tortfeasors were taken as true, as they must be on a motion for dismissal, there was no genuine and disputed question of fact to be decided by a jury. The orders of dismissal were proper.

Plaintiff could have simply dismissed the parties without prejudice to his other claims in accordance with section 46 of the Civil Practice Act. (Ill. Rev. Stat. 1975, ch. 110, par. 46(1).) He had used this device when he discontinued his action against defendants, Siles, Keeler, Kaman, Core and Brouder by omitting them from his third amended complaint. He also could have executed a covenant not to sue which would not have barred his action against the other parties. The plaintiff demonstrated that he understood the difference between a covenant not to sue and a release in an answer to the motion to dismiss. There he argued that the document he signed was to be construed as a covenant not to sue and not as a

release. However, the notarial seal at the end of the release recited that "Lee Artoe * * * appeared before me * * * and expressly acknowledged to me * * * that he understood the foregoing release to be a general release and intended to be legally bound by same." Having voluntarily signed the release, plaintiff cannot avoid its legal effect. As was pointed out in *Ogren v. Graves* (1976), 39 Ill. App. 3d 620, 622, 350 N.E.2d 249, 251: "where the release is executed with knowledge of its meaning, causes of action covered by the release are barred." The trial court's granting of the orders of dismissal was proper and is therefore affirmed.

Affirmed.

SULLIVAN, P. J., and LORENZ, J., concur.