CLEAR-VU PACKAGING, INC., *et al.*, Plaintiffs-Appellants, *v.* NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., Defendant.— (THE ALPER AGENCY, INC., Defendant-Appellee.)

Second District    No. 81-480

Opinion filed March 25, 1982.—Rehearing denied May 11, 1982.

Marvin Glassman and Nicholas J. Lynn, both of Rabens, Formusa and Glassman, Ltd., of Chicago, for appellants.

Robert S. Soderstrom and Shaun McParland, both of McKenna, Storer, Rowe, White & Farrug, of Chicago, for appellee.

JUSTICE REINHARD delivered the opinion of the court:

This appeal arises from a dismissal of plaintiffs' amended complaint pursuant to section 48(1)(f) of the Illinois Civil Practice Act. (Ill. Rev. Stat. 1979, ch. 110, par. 48(1)(f).) The sole issue presented for our review is whether plaintiffs' release of a defendant insurance company for liability under the terms of an insurance policy operated as a release of the defendant insurance broker for liability for its alleged failure to procure a policy in conformance with the plaintiffs' request.

On June 20, 1978, plaintiffs, Clear-Vu Packaging, Inc. (Clear-Vu), and Plastofilm Industries, Inc. (Plastofilm), filed a two-count complaint against defendants, National Union Fire Insurance Co. (National Union)

and the Alper Agency, Inc. (Alper), seeking to recover $2,024,400 in damages which they sustained as a result of a fire on their insured premises. Plastofilm is the sole owner of all outstanding shares of stock in Clear-Vu. Count I of the complaint, directed against Alper, sought a declaration of the rights and liabilities of the parties under the provisions of an insurance binder letter dated April 25, 1977, and subsequent letters and agreements between Alper, Clear-Vu and Plastofilm. This count further requested judgment against Alper in an amount equal to plaintiffs' total loss suffered less any sum paid by National Union. Count II sought judgment against National Union under the terms of the insurance policy issued to plaintiffs.

On January 19, 1979, plaintiffs filed an amended complaint seeking, in addition to the relief sought in the original complaint, damages against Alper for its improper preparation of plaintiffs' business interruption claim, and punitive damages against National Union for its refusal to pay plaintiffs' claim. The punitive damages claim was subsequently dismissed by the trial court. Also, a countercomplaint was filed by Alper against National Union which is not pertinent to this appeal. On December 28, 1979, plaintiffs' remaining claim against National Union was then dismissed pursuant to a stipulation of the parties that the claim would be litigated in an action between the parties pending in the State of New York. Thereafter, plaintiffs and National Union executed a document, in consideration of $1,250,000 paid by National Union, releasing National Union from all causes of action plaintiffs had against National Union arising out of the insurance policy.

On May 19, 1980, plaintiffs filed an amended count I against Alper. The facts as alleged in that amended count are essentially as follows. Prior to February 17, 1977, plaintiffs requested Alper to obtain insurance coverage for property and business interruption loss for the property and business operations for Clear-Vu which was located at 112 Bruckner Blvd., Bronx, New York, New York. On April 25, 1977, plaintiffs received a letter from Alper asserting that arrangements had been made with National Union "to accept on an All Risk Basis an amount of $2,650,000 blanket contents, property of others, and business interruption." Accompanying the letter was an insurance premium invoice in the amount of $5,762 which plaintiffs promptly paid. The insurance policy issued by National Union, however, did not conform to the agreement between plaintiffs and Alper, and Alper failed to attend to correction of the policy or to advise plaintiffs that a policy could not be obtained in accordance with their agreement. On or about August 6, 1977, a fire occurred at Clear-Vu's plant and offices in New York, resulting in loss and damage in the total amount of $2,024,400. This amount consisted of a contents loss of $1,311,059 and a business interruption loss of $713,341. Subsequently,

plaintiffs were advised by National Union that the policy in force on the date of the fire did not provide blanket coverage but was limited to $1,150,000 for loss of contents and $1,500,000 for business interruption. As a result of the failure of the policy to sufficiently cover plaintiffs' contents loss, plaintiffs suffered an uninsured loss of $161,059. Plaintiffs prayed for judgment against Alper in an amount equal to the total loss suffered less any sums paid by National Union.

On August 11, 1980, Alper filed a motion to dismiss claiming that plaintiffs' release of National Union operated to release plaintiffs' claim against it. The trial court granted Alper's motion, and plaintiff now appeals.

■■ We note initially that in reviewing a trial court's order granting a defendant's motion to dismiss a complaint, we must regard all well-pleaded facts and their reasonable inferences as true. (*Wilczynski v. Goodman* (1979), 73 Ill. App. 3d 51, 54, 391 N.E.2d 479.) In addressing the issue raised for our review, we must first determine if the release executed between plaintiffs and National Union, on its face, purported to release Alper. The document in question provided that Clear-Vu and Plastofilm in consideration of the sum of $1,250,000 received from National Union "do hereby release and discharge National its successors and assigns, from all actions, causes of actions, * * * whatsoever, in law, admiralty or equity, which against National either Plastofilm or Clear-Vu or both, or their successors or assigns, ever had, now have or hereafter can, shall, or may have, arising out of the occurrence of a fire on August 7, 1977, which damaged Clear-Vu's premises at 112 Bruckner Boulevard, Bronx, New York, or under, by virtue of, or in connection with, a certain contract of insurance between National and Clear-Vu, bearing policy no. 4509158 * * *." Manifestly, the document does not purport to release anyone other than "National its successors and assigns." The intention of the parties controls the scope and effect of the release and such intent is determined from the language of the instrument when read in light of the circumstances surrounding the transaction. (*Gladinus v. Laughlin* (1977), 51 Ill. App. 3d 694, 696, 366 N.E.2d 430.) Since the document in question does not mention the Alper Agency nor does it state it is in full satisfaction of all of plaintiffs' claims against all potential parties, we believe it is clear that the parties intended to release only National Union from any liability it might have on the insurance policy. We cannot interpret the language of the release so broadly as to defeat a valid claim not then in the minds of the parties. 51 Ill. App. 3d 694, 696, 366 N.E.2d 430.

■■ Having decided that the document on its face does not release Alper, we must now determine whether Alper was released by operation of law. It is well settled in Illinois that the release of one joint tortfeasor releases

all. (*Pate v. City of Sesser* (1979), 75 Ill. App. 3d 233, 237, 393 N.E.2d 1146; *Smith v. Lehn & Fink Products Corp.* (1977), 46 Ill. App. 3d 1002, 1009, 361 N.E.2d 661.) This same rule applies to those concurrently liable for a single indivisible injury, not merely those who are technically joint tortfeasors. (*Alberstett v. Country Mutual Insurance Co.* (1979), 79 Ill. App. 3d 407, 410, 398 N.E.2d 611; *Artoe v. Navajo Freight Lines, Inc.* (1978), 65 Ill. App. 3d 119, 123, 382 N.E.2d 492.) On the other hand, it has been held that a release given a nontortfeasor does not release another who may be a tortfeasor (*Scoggins v. Village of Hartford* (1967), 86 Ill. App. 2d 233, 236, 229 N.E.2d 550), and a release of one tortfeasor does not act as a bar to an action against another tortfeasor whose separate tortious conduct results in a separate and distinct injury. *Anderson v. Martzke* (1970), 131 Ill. App. 2d 61, 67, 266 N.E.2d 137.

■■ Plaintiffs' complaint against Alper appears to be based on the general rule that an insurance broker is liable for any loss sustained by the principal if he neglects to procure insurance or does not follow instructions when obligated to do so, or if the policy obtained is void or materially defective through the broker's fault, or if the principal suffers damage by reason of any mistake or act of omission or commission of the broker. (*National Boulevard Bank v. Brokerage Resources, Inc.* (1976), 42 Ill. App. 3d 940, 943, 356 N.E.2d 988.) It has also been stated that a broker's liability may be based on a theory of negligence or in contract for failure to perform an agreement to procure proper insurance. (*Black v. Illinois Fair Plan Association* (1980), 87 Ill. App. 3d 1106, 1111, 409 N.E.2d 549.) Indeed, cases in Illinois seem to reflect both theories of liability. See, *e.g., Black v. Illinois Fair Plan Association* (1980), 87 Ill. App. 3d 1106, 409 N.E.2d 549, and *Gothberg v. Nemerovski* (1965), 58 Ill. App. 2d 372, 208 N.E.2d 12.

However, regardless of whether we characterize plaintiffs' complaint against Alper as sounding in tort or in contract, it is clear that Alper and National Union cannot be seen as joint tortfeasors nor can they be considered concurrently liable for a single, indivisible injury to plaintiffs. An examination of plaintiffs' amended complaint reveals that the cause of action against National Union was based on National Union's refusal to pay on the policy of insurance. A suit for failure to pay under a policy of insurance is one founded on breach of contract. (*Schewe v. Home Insurance Co.* (1980), 80 Ill. App. 3d 829, 831-32, 400 N.E.2d 501.) The alleged failure of National Union to pay on the insurance policy caused injury to plaintiffs that was separate and distinct from the injury which resulted in Alper's alleged failure to procure a policy in conformance with plaintiffs' request. See *Green v. Helmcamp Insurance Agency* (Tex. Civ. App. 1973), 499 S.W.2d 730 (settlement of claim with insurance company

does not constitute an election of remedies so as to bar a claim against the broker for failure to provide coverage since the two claims were found to be "separate and distinct").

In this regard we also note that the rationale for the rule that a release of one joint tortfeasor releases all appears to be in the notion that there can be but one recovery for a single injury. As the court in *Manthei v. Heimerdinger* (1947), 332 Ill. App. 335, 350, 75 N.E.2d 132, stated:

> " 'It is an ancient doctrine that a release to one joint trespasser, or a satisfaction from him, discharges the whole. The same doctrine applies to all joint torts, and to torts for which the injured party has an election to sue one or more parties severally. * * * If it were not so, a party having a claim against several persons on account of a single tort might sue one and settle the suit, receiving damages; he might then sue another and settle in the same way, and repeat the proceeding as to all but one, and then sue him and recover the whole damage, as if nothing had been paid by the others. A door would thus be opened to a class of speculations that do not deserve encouragement. The rule of law which makes one satisfaction or release a bar to further claims for the same tort is founded in good reason.' "

In the present case there is no such danger of double recovery since we have determined that plaintiffs' amended complaint alleges separate and distinct causes of action against Alper and National Union. Additionally, plaintiffs' amended count I against Alper prays for "an amount equal to plaintiffs [*sic*] total loss suffered under this occurrence *less any sum or sums paid or to be paid by National Union* with reference to this subject matter." (Emphasis added.) Since National Union has already paid $1,250,000 in consideration for the release, Alper, if found liable, would only be accountable for the balance between this sum and the sum representing plaintiffs' total loss. Under these circumstances, there is no danger of double recovery, and the rationale for the above-quoted rule does not apply.

The recent decision in *Schrempf v. New England Mutual Life Insurance Co.* (1982), 103 Ill. App. 3d 408, is inapposite to the case at bar as in that case the court found that the claim intended to be released included all types of actions. Here, we conclude that the release, though broadly discharging National Union from all actions, suits, etc., was clearly intended to settle only plaintiffs' claim against National Union arising from the contract of insurance.

■■ Since we have determined National Union and Alper are not joint tortfeasors and are not concurrently liable for a single indivisible injury to plaintiffs, the release of National Union did not act as a release of Alper. See *Anderson v. Martzke* (1970), 131 Ill. App. 2d 61, 67, 266 N.E.2d 137;

*Cereal Byproducts Co. v. Hall* (1958), 16 Ill. App. 2d 79, 83-84, 147 N.E.2d 383, *aff'd* (1958), 15 Ill. 2d 313, 155 N.E.2d 14.

Accordingly, the judgment of the circuit court of Du Page County dismissing plaintiffs' complaint is reversed and the cause is remanded.

Reversed and remanded.

LINDBERG and NASH, JJ., concur.