OBERWEIS DAIRY, INC., Plaintiff,

v.

ASSOCIATED MILK PRODUCERS, INC., et al., Defendants.

No. 72 C 1404.

United States District Court, N.D. Illinois, E.D.

Aug. 4, 1983.

See also D.C., 553 F.Supp. 962.

Victor M. Harding, Milwaukee, Wis., Rowley & Watts, Washington, D.C., Whyte & Hirschboeck S.C., Milwaukee, Wis., for plaintiff.

Donald M. Barnes, Arent, Fox, Kintner, Plotkin & Kahn, Washington, D.C., Kael B. Kennedy, Katten, Muchin, Zavis, Pearl & Galler, Chicago, Ill., for defendants AMPI.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Oberweis Dairy, Inc. ("Oberweis") sued Associated Milk Producers, Inc. ("AMPI") and Central Milk Producers Cooperative ("CMPC")[1] alleging violations of the Sherman Act, 15 U.S.C. §§ 1 and 2. AMPI filed a Counterclaim asserting Oberweis' commencement of this action violated an Agreement of Settlement (the "Agreement") that terminated Oberweis' earlier antitrust action against AMPI's predecessor and others, *Oberweis Dairy, Inc. v. Pure Milk Association*, No. 65 C 2189 (N.D.Ill.) (the "1965 Lawsuit"). Oberweis has now moved under Fed.R.Civ.P. ("Rule") 56 for summary judgment on AMPI's Counterclaim. For the reasons stated in this memorandum opinion and order Oberweis' motion is granted.

In their briefing on Oberweis' motion both parties also addressed the legal effect on and relevance to this action of a release (the "Release") executed by Oberweis as part of the settlement of the 1965 Lawsuit. AMPI had already pleaded the Release as an affirmative defense to Oberweis' own claim. At a July 26, 1983 status hearing this Court informed the parties it was also prepared to consider the parties' arguments on the Release as arguments for and against a Rule 56 motion by AMPI for summary judgment on Oberweis' claim, *if* the parties had nothing more to offer on that score. In response the parties advised this Court (1) they agreed with its characterization of their briefing arguments and (2) they were prepared to stand on those arguments as already submitted. For the reasons stated in this memorandum opinion and order AMPI is denied summary judgment on Oberweis' claim on the basis of the Release.

### Background

Oberweis filed the 1965 Lawsuit seeking both damages and injunctive relief for alleged antitrust violations by Pure Milk Association ("PMA") and others. In particular, Oberweis attacked the 1965 Lawsuit defendants' maintenance of "super pool agreements" in the milk industry (1965 Complaint ¶¶ 13, 28–29, Prayer ¶¶ 5 and 6).[2]

Oberweis, PMA and others entered into the Agreement August 26, 1969. Agreement ¶ 2 provided:

> Plaintiff [Oberweis] will not interfere with the performance of any milk marketing agreement now or hereafter in effect between Federated Dairy Cooperatives or Pure Milk Association and any dairy farmer or any milk marketing agreement now or hereafter in effect between Federated Dairy Cooperatives or Pure Milk Association and any "cooperative association of producers," "association of producers," or "marketing agencies in common" as defined in §§ 2, 291 and 2302 of Title 7 and § 1141j of Title 12, U.S.C.A.

Contemporaneously Oberweis executed a Release that provided:

> For the sum of Ten Dollars ($10.00) and other valuable consideration, receipt of which is hereby acknowledged this 26th day of August, 1969, OBERWEIS DAIRY, INC., for itself, and any successors or assigns, does hereby release and forever discharge PURE MILK ASSOCIATION, FEDERATED DAIRY COOPERATIVES and ASSOCIATED MILK DEALERS, INC., and each of their officers, directors, employees, stockholders, members, agents and representatives, and any successors or assigns thereof, from any and all manner of action or actions, cause or causes of action, damages or demands, whatsoever, be they in law or

---

1. Only AMPI and CMPC remain from among the many defendants originally named in this decade-old action.

2. As explained by 1965 Complaint ¶¶ 14(D)–(G), a "super pool agreement" was an illegal agreement among defendants to obtain prices for dairy farmers in excess of the "pool price" established for raw milk in the Chicago region by the United States Department of Agriculture. On the economics of the Midwest dairy industry, see *Alexander v. National Farmers Organization*, 687 F.2d 1173, 1179–81 (8th Cir. 1982), *cert. denied*, —— U.S. ——, 103 S.Ct. 2108, 77 L.Ed.2d 313 (1983).

equity, which arise out of or refer or relate to, directly or indirectly, the facts, claims, or causes of action alleged in the complaint in the case entitled *Oberweis Dairy, Inc. v. Pure Milk Association, Federated Dairy Cooperatives and Associated Milk Dealers, Inc.*, filed December 23, 1965 in the United States District Court for the Northern District of Illinois, Eastern Division, and further identifiable as Case No. 65 C 2189 in said Court.[3]

Oberweis filed its present action in 1972, again seeking both damages and injunctive relief against alleged antitrust violations. Count I ¶ 21 of the 1972 Complaint alleged a conspiracy beginning as early as 1957, and Oberweis again specifically attacked the super pool program (*id.* ¶ 23(e)–(f), Prayer (a)). In its Answer AMPI pleaded the Release as its Seventh Affirmative Defense and the Agreement as its Eleventh Affirmative Defense. AMPI's Counterclaim seeks damages for Oberweis' alleged violation of the Agreement by commencement of the present action.

*Oberweis' Motion on AMPI's Counterclaim*

■ Oberweis advances three arguments in support of its summary judgment motion (Mem. 1–3):

1. By its terms the Agreement does not expressly bind Oberweis to refrain from enforcing subsequently-arising antitrust claims.

2. If the Agreement were nonetheless construed to preclude the enforcement of

---

3. Oberweis does not dispute AMPI is successor to PMA and thus entitled to the benefits of the Agreement and the Release.

4. In part that third argument is anachronistic nonsense, for this Court's 1982 holding could not have "justified" (Mem. 3) Oberweis' 1972 filing. More importantly the Agreement and Release pose the question of *Oberweis'* right to sue AMPI, and AMPI's proved antitrust violations are not relevant to that narrower question. Oberweis' third argument thus begs the question posed here.

5. Though the Agreement and the Release were executed in the context of a federal antitrust action, they are state law contracts. See the discussion in *Strama v. Peterson*, 96 F.R.D.

---

antitrust claims, the Agreement would be void as contrary to public policy.

3. Because this Court has already determined AMPI is collaterally estopped from denying its violations of the antitrust laws in the period 1970–71, see 553 F.Supp. 962, 970 (N.D.Ill.1982), Oberweis was justified in commencing its present action.[4]

AMPI responds (Ans. Mem. 4–5) Oberweis' motion must be denied because there are material issues of fact as to whether Oberweis has violated the Release and the Agreement by commencing this action.

■ Settlement agreements are contracts subject to the ordinary rules of contract construction, including the basic rule that construction aims to arrive at the parties' intention. 11 I.L.P. Compromise and Settlement § 3, at 80–81 (1981).[5] Again, because the Agreement is in writing the intention of the parties "is to be determined from the writing itself, read in the light of the circumstances surrounding its execution." *Id.* at 81.

By those lights the Agreement probably ought to be regarded as ambiguous on its face in obligating Oberweis not to "interfere" with milk marketing agreements between PMA and dairy farmers. Oberweis argues (Mem. 1) the Agreement does not expressly purport to bind it "to refrain from enforcing any subsequently arising antitrust claims." Somewhat more plausibly AMPI responds (Ans. Mem. 11–15) the present action is essentially an attempt to "interfere" with AMPI's marketing agree-

---

198, 199–201 (N.D.Ill.1982) and cases cited there. Illinois courts would no doubt apply Illinois law in interpreting the Agreement and the Release, whatever choice-of-law rule they follow in contract actions (see *Overseas Development DISC Corp. v. Sangamo Construction Co.*, 686 F.2d 498, 510–11 & n. 43 (7th Cir. 1982)). In any event there is no apparent difference between Illinois' law and any other state's law or federal law on the basic contract law issues raised here, so no choice of law determination really need be made (*In re Air Crash Disaster Near Chicago, Ill.*, 644 F.2d 594, 605 & n. 2 (7th Cir.), cert. denied sub nom. *Lin v. American Airlines, Inc.*, 454 U.S. 878, 102 S.Ct. 358, 70 L.Ed.2d 187 (1981)).

ments, because Oberweis challenges AMPI's agreements with both its producer-members and CMPC. Indeed, in the conceivable universe of "interference" in which Oberweis could engage, such a challenge would seem one of the most likely possibilities.

In opposing Oberweis' summary judgment motion AMPI is entitled to reasonable inferences drawn in its favor, and (contrary to the notion in Oberweis' R. Mem. 5–6) the initial burden is on Oberweis, not AMPI, to demonstrate the absence of a genuine issue of material fact. *See Egger v. Phillips,* 710 F.2d 292 at 296 (7th Cir.1983). Ordinarily, then, Oberweis' summary judgment motion would be denied because of the ambiguity of the Agreement—in this case, read AMPI's way. But if the Agreement *is* construed as AMPI argues—as precluding Oberweis' bringing this action—it is void as contrary to the public policy of the antitrust laws. Ironically perhaps, viewed in the only way it could be read to support the assertion of AMPI's Counterclaim, the Agreement cannot be enforced.

■ True, a "general release, or a broad covenant not to sue" on antitrust claims [6] is not contrary to public policy where the release or covenant refers to past antitrust violations or to damages caused by such past violations (even if realized only subsequently). *See Richard's Lumber and Supply Co. v. United States Gypsum Co.,* 545 F.2d 18, 20 (7th Cir.1976), *cert. denied,* 430 U.S. 915, 97 S.Ct. 1326, 51 L.Ed.2d 593 (1977) and cases cited there. *See also Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321, 342–48, 91 S.Ct. 795, 808–811, 28 L.Ed.2d 77 (1971). So the Agreement could legitimately bar Oberweis from "interfering" with AMPI's marketing activities by seeking pre-September 1969 damages. But Oberweis has foregone those damages here (R.Mem. 4).

AMPI wishes (Ans.Mem. 11–13) to construe the Agreement so it would have been

violated even by the present action's attempt to "interfere" with AMPI's post-August 26, 1969 conduct. However, such a result would undermine the public policy expressed in the antitrust laws by permitting enforcement of a contract detrimental to competition and therefore the public good. That rationale was well expressed in *Fox Midwest Theatres, Inc. v. Means,* 221 F.2d 173, 180 (8th Cir.1955) (citation omitted):

> Any contractual provision which could be argued to absolve one party from liability for future violations of the antitrust statutes against another would to that extent be void as against public policy. . . . This is because the effect of such a release could be to permit a restraint of trade to be engaged in, which would have impact, not simply between the parties, but upon the public as well. Such a release, if recognized as having any validity of that nature, could therefore itself operatively serve as a contract "in restraint of trade." Section 1 of the Sherman Anti-Trust Act, 15 U.S.C.A. § 1, of course, brands all contracts in restraint of trade as "illegal."

*Accord, Three Rivers Motors Co. v. Ford Motor Co.,* 522 F.2d 885, 895–97 & n. 27 (3d Cir.1975) (cited by our Court of Appeals in *Richard's Lumber,* 545 F.2d at 20), and cases cited in n. 27.

Accordingly AMPI cannot enforce the Agreement against Oberweis' commencement of the present action. There is no genuine issue of fact material to the question of Oberweis' liability to AMPI for alleged breach of the Agreement. Oberweis is therefore entitled to a judgment as a matter of law on AMPI's Counterclaim.

*AMPI's Defenses to Oberweis' Claim*

■ Oberweis seems to argue (R.Mem. 3–5) the Release could not have been meant to apply *in futuro.* But the Release is as

**6.** There is no statutory counterpart in the antitrust laws to the provision that invalidates advance releases of potential securities law claims, Section 29(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78cc(a). As

the further text discussion reflects, however, the courts have developed and applied a corresponding public policy in the antitrust field as a matter of case law.

much a contract as the Agreement, 31 I.L.P. Releases § 21, at 346 (1957), and so its terms and the intentions of the parties determine its scope. See *Richard's Lumber,* 545 F.2d at 20; *Clear-Vu Packaging, Inc. v. National Union Fire Insurance Co.,* 105 Ill. App.3d 671, 674, 61 Ill.Dec. 212, 214–15, 434 N.E.2d 365, 367–68 (2d Dist.1982).

■ In terms the Release discharged PMA (and therefore AMPI as its successor) from all actions "in law or equity, which arise out of or refer or relate to, directly or indirectly, the facts, claims, or causes of action alleged" in the 1965 Lawsuit. Those terms could not be more sweeping, and their only real limitation is that the 1965 Lawsuit determines the scope of what Oberweis precluded itself from prosecuting against PMA and therefore AMPI in the future.

Oberweis takes comfort in the fact it has now restricted its damages claims in the present action to the post-September 1969 period (Motion To Dismiss AMPI Counterclaim ¶ 6; R. Mem. 4). But its 1965 Lawsuit was a broadbased attack on defendants' marketing activities—one in which Oberweis sought not only damages but also *prospective* relief—both declaratory (1965 Complaint Prayer ¶¶ 1–3) and injunctive (*id.* ¶¶ 5–6). Thus the 1965 Lawsuit specifically raised claims as to the illegality of PMA–AMPI practices, importantly including such illegality if the parties continued to engage in those practices in the future. In unambiguous language the Release bound Oberweis not to commence *any* action asserting that illegality.[7] Indeed the Complaint in the present action virtually confesses it runs afoul of the Release, because it alleges (Count I ¶ 21) an antitrust conspiracy beginning "as early as 1957"!

On the question of what the Release *means,* this Court finds persuasive the distinction made in *Main Line Theatres, Inc. v. Paramount Film Distributing Corp.,* 298 F.2d 801, 803 (3d Cir.), *cert. denied,* 370 U.S. 939, 82 S.Ct. 1585, 8 L.Ed.2d 807 (1962):

> Had [the settled action] been an action for damages only, without a prayer that the defendants be restrained from continuing or repeating the licensing practices of which the plaintiff complained, the essential feature of any undertaking to settle the suit for a stated sum would have been the plaintiffs' promise to forego a money claim, the only matter in controversy. Here the suit contained a demand for injunctive prohibition of future wrongful conduct as well as a claim for money damages for alleged past misconduct. In such circumstances a reasonable person agreeing, without any expression of limitation, to accept a sum in settlement of the litigation should and reasonably would understand that both aspects of the suit were covered by the settlement. Certainly, a defendant offering a sum in settlement of a suit asking, among other things, for an injunction against certain conduct, would not understand that a similar demand could be asserted the day after settlement. This reasonable understanding determines the meaning of the assent expressed by the parties here.[8]

That analysis properly focuses on what a release signifies as to the parties' intentions when it is executed in the context of a suit for equitable (and not only legal) relief.

---

7. Certainly "the facts, claims, or causes of action alleged" in the 1965 Lawsuit embraced the claim of antitrust violation by the ongoing (and forward-going) course of conduct. This action plainly "arise[s] out of or refer[s] or relate[s] to" that selfsame claim and course of conduct, and it is thus literally discharged by the Release.

8. It must be remembered Oberweis—and similar commercial players—are presumed to know and pursue their own interests. Oberweis obtained $95,000 in return for executing the Agreement and the Release, a price at which it was willing to "sell" its ability to enforce the antitrust laws against AMPI. It might be considered unjust in Aristotelian terms for Oberweis thus to manage a profit from its contrary-to-public-policy sale. That however is the usual result of invalidating freely-bargained-for contracts because of supervening public policy: a windfall for the party held not to be bound by its promise.

 It is well established a general release is valid as to all claims of which a signing party has actual knowledge or that he could have discovered upon reasonable inquiry. *See Goodman v. Epstein,* 582 F.2d 388, 402–04 (7th Cir.1978), *cert. denied,* 440 U.S. 939, 99 S.Ct. 1289, 59 L.Ed.2d 499 (1979) (a Securities Exchange Act case); *Clear Vu Packaging,* 105 Ill.App.3d at 674, 61 Ill.Dec. at 214–15, 434 N.E.2d at 367–68; 31 I.L.P. Releases § 26, at 351–52. Oberweis' 1965 Complaint shows beyond doubt PMA's marketing activities were within its contemplation at the time it filed and settled the 1965 Lawsuit: 1965 Complaint ¶ 27 specifically cited defendants' "conspiracies" and "agreements" from "1961 to date." And Oberweis' 1972 Complaint shows beyond doubt those same "conspiracies" and "agreements"—now dated from 1957—were the target of the present action. Thus, although the *damages* Oberweis has lately confined itself to in the present action are "future" damages (i.e., damages allegedly suffered after the Release), the activities ostensibly giving rise to those damages were certainly known to Oberweis in 1969. And therefore the Release (read fairly) offered to discharge PMA and its successors from liability to Oberweis for those same activities.

In sum the Release, properly construed, really did offer to immunize AMPI from antitrust liability to Oberweis for activities both before and after August 26, 1969. But once again public policy considerations save Oberweis from what must now be regarded as its folly—even though at the time of its execution the Release implemented a business and legal deal Oberweis consciously and freely cut. For the same reasons stated in *Fox Midwest Theatres* and the numerous other cases referred to in the preceding section, the Release cannot be enforced as AMPI would have it.

Consequently there is also no genuine issue of fact material to AMPI's legal ability to assert the Release as an affirmative defense barring Oberweis' recovery. AMPI's motion for summary judgment on Oberweis' claim must be denied. Because that conclusion is compelled as a matter of law and not simply as a matter of possible factual inferences, Oberweis is entitled to have AMPI's affirmative defense stricken.

### Conclusion

Oberweis' motion for summary judgment on AMPI's Counterclaim is granted, and the Counterclaim and AMPI's Eleventh Affirmative Defense are therefore stricken. AMPI's motion for summary judgment on Oberweis' claim is denied, and AMPI's Seventh Affirmative Defense is stricken as well. Because counsel for the parties have recently submitted final pretrial order materials, each is directed to transmit to this Court on or before August 17, 1983 (with a copy to opposing counsel) a letter stating what portions if any of the previously filed materials are no longer relevant to the case as a result of these rulings.