JOYCE M. RAKOWSKI *et al.*, Plaintiffs, *v.* JAMES LUCENTE *et al.*, Defendants (James Lucente, Counterplaintiff-Appellant, *v.* Leo R. Rakowski, Counterdefendant-Appellee).

First District (4th Division)   No. 83—37

Opinion filed December 22, 1983.

Pretzel & Stouffer, Chartered, of Chicago (Robert Marc Chemers, of counsel), for appellant.

Victor J. Piekarski and Susan F. Zwick, both of Querrey, Harrow, Gulanick & Kennedy, Ltd., of Chicago, for appellee.

JUSTICE LINN delivered the opinion of the court:

Plaintiff, Leo Rakowski, and his two passengers filed suit against defendant, James Lucente, for personal injuries sustained in a two-car collision. Lucente counterclaimed against Rakowski pursuant to the Contribution Among Joint Tortfeasors Act (Act) (Ill. Rev. Stat. 1981, ch. 70, par. 302(a)).

Rakowski moved to dismiss the counterclaim on the ground that a general release signed by Lucente as part of a previously executed settlement agreement barred all subsequent claims, including the counterclaim for contribution.

The trial court granted Rakowski's motion, dismissed the counterclaim with prejudice and denied a rehearing. Lucente now appeals.

We affirm the decision of the trial court.

Facts

On September 7, 1981, Leo Rakowski, and his two passengers,

Joyce M. Rakowski and Edward J. Rakowski, a minor, were involved in a two-car accident with the counterplaintiff-appellant, James Lucente.

On September 21, 1981, James Lucente and the owner of the vehicle he was driving received $2,297 from Leo Rakowski and his insurer in full settlement of the medical expenses and property damages sustained. On that same day, Lucente signed a release negotiated by Rakowski, which read as follows:

" 'RELEASE'

For the Sole Consideration of Two Thousand two hundred ninety seven Dollars, the receipt and sufficiency whereof is hereby acknowledged, the undersigned hereby releases and forever discharges Leo Rakowski, his heirs, executors, administrator, agents and assigns, and all other persons, firms or corporations liable or who might be claimed to be liable, none of whom admit any liability to the undersigned but all expressly deny any liability, from any and all claims, demands, damages, actions, causes of action or suits of any kind or nature whatsoever, and particularly on account of all injuries, known and unknown, both to person and property, which have resulted or may in the future develop from an accident which occurred on or about the 7th day of Sept., 1981 at or near Grand and Mannheim, Franklin Park.

This release expressly reserves all rights of the parties released to pursue their legal remedies, if any, against the undersigned, their heirs, executors, agents and assigns.

Undersigned hereby declares that the terms of this settlement have been completely read and are fully understood and voluntarily accepted for the purpose of making a full and final compromise adjustment and settlement of any and all claims, disputed or otherwise, on account of the injuries and damages above mentioned, and for the express purpose of precluding forever any further or additional claims arising out of the aforesaid accident."

On the following day, September 22, 1981, Rakowski and his two passengers filed suit against Lucente, seeking damages for personal injury sustained in the aforementioned accident.

Lucente, in turn, filed a counterclaim against Rakowski pursuant to the Contribution Among Joint Tortfeasors Act (Ill. Rev. Stat. 1981, ch. 70, par. 302(a)), seeking contribution to pay any damages awarded to the passengers. Rakowski moved to dismiss the counterclaim on the grounds that the release signed by Lucente barred all subsequent

claims, including the counterclaim for contribution. In opposition to Rakowski's motion to dismiss, Lucente submitted an affidavit to the trial court. The affidavit explained that the release executed on September 21, 1981, was contemplated to be a release solely for liability for any personal injuries sustained by Lucente as a result of the accident. Lucente swore that he never contemplated releasing nor released Rakowski from contributing to any damages awarded to Rakowski's passengers as a result of the accident.

The trial court granted Rakowski's motion and dismissed with prejudice the counterclaim for contribution. Lucente's subsequent motion for rehearing was denied. This appeal followed.

OPINION

The sole issue on appeal is whether a counterclaim for contribution filed pursuant to the Illinois Contribution Among Joint Tortfeasors Act (Act) (Ill. Rev. Stat. 1981, ch. 70, par. 305), is barred by the execution of a general release given by the tortfeasor/counterclaimant to the joint tortfeasor/plaintiff, in settlement of a previous action. Applying this issue to the facts at bar, the question becomes, does the general release executed by Lucente and given to Rakowski as part of a previous settlement bar Lucente's counterclaim for contribution against Rakowski in a subsequent suit brought by Rakowski, a joint tortfeasor, and his two passengers. Our reading of the Contribution Among Joint Tortfeasors Act leads us to conclude that the counterclaim is barred.

Section 302 of the Act, which sets forth the right of contribution among joint tortfeasors, reads in pertinent part:

"* * *

(c) When a release or covenant not to sue or not to enforce judgment is given in good faith to one or more persons liable in tort arising out of the same injury or the same wrongful death, it does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms so provide ***

(d) The tortfeasor who settles with a claimant pursuant to paragraph (c) is discharged from all liability for any contribution to any other tortfeasor.

* * *"

Ill. Rev. Stat. 1981, ch. 70, pars. 302(c), (d).

Both parties state that the issue in the instant case, whether a general release extends to a claim for contribution between joint tortfeasors for damages sustained by third parties, is one of first impression in Illinois. While our research has not uncovered any case in

which this has been the dispositive issue, we have found two cases in this State in which the issue was raised but not addressed. In both *LeMaster v. Amsted Industries, Inc.* (1982), 110 Ill. App. 3d 729, 442 N.E.2d 1367, and *Houser v. Witt* (1982), 111 Ill. App. 3d 123, 443 N.E.2d 725, a tortfeasor brought a contribution claim against a joint tortfeasor for damages sustained by a third party after the joint tortfeasor had settled and executed a general release with a claimant. The claims for contribution in both actions were brought pursuant to the Act. In *LeMaster*, the court found that the general release given to the joint tortfeasor by the claimant did not constitute a bar to the other tortfeasor's claim for contribution because the settlement agreement was not entered into in "good faith" due to the lack of consideration. (*LeMaster v. Amsted Industries, Inc.* (1982), 110 Ill. App. 3d 729, 736, 442 N.E.2d 1367, 1373.) In *Houser*, the injured parties in an auto accident settled with the defendant and executed a joint release. Defendant/releasee, alleging comparative negligence, counterclaimed against the driver/joint tortfeasor for contribution to the damages awarded to the passenger. The court directed a verdict for the driver because the joint settlement agreement did not apportion the damages attributable solely to the passenger. The court suggested in *dicta* that a properly drawn release would have enabled the releasee to counterclaim against the joint tortfeasor/claimant for his portion of the damages awarded to the passenger. (*Houser v. Witt* (1982), 111 Ill. App. 3d 123, 127, 443 N.E.2d 725, 728.) Both *Houser* and *LeMaster* suggest that a general release does extend to a contribution claim between joint tortfeasors for damages sustained by third parties.

While the disposition of the instant issue in regard to general releases may merely be inferred from the aforementioned cases, it has been specifically addressed in regard to a covenant not to sue. (*Van Jacobs v. Parikh* (1981), 97 Ill. App. 3d 610, 612, 422 N.E.2d 979, 980-81.) The Act treats a release and a covenant not to sue identically for purposes of a joint tortfeasor's right to contribution. (Ill. Rev. Stat. 1981, ch. 70, par. 302(c).) Thus, the interpretation and application of sections 302(c) and (d) set forth in *Van Jacobs* are germane to the instant inquiry.

In *Van Jacobs*, Parikh and Roper, joint tortfeasors, had been joined as defendants in a wrongful death action brought by Van Jacobs. Van Jacobs settled with Parikh for $10,000, and a covenant not to sue was executed. Roper thereafter filed a third-party complaint against Parikh, the releasee, seeking contribution. Parikh moved to dismiss on the basis of section 302(c) and (d) of the contribution act (Ill. Rev. Stat. 1981, ch. 70, pars. 302(c), (d)). The trial court agreed

that under the Act, Parikh's settlement immunized him from any liability to Roper. Affirming, the appellate court reasoned as follows:

"We first address the count in the third-party complaint which seeks contribution. The act applies to any tortfeasors who are 'subject to liability' for the same injury or wrongful death. (Ill. Rev. Stat. 1979, ch. 70, par. 302(a).) Section 2(d) of the act by its terms discharges settling parties of liability for contribution. It is modeled after the Uniform Contribution Among Tortfeasors Act of 1955 (see 12 Uniform Laws Annotated sec. 4(b), at 98 (1965)), and clearly evinces legislative intent to encourage settlements in tort litigation. (Appel and Michael, *Contribution Among Joint Tortfeasors in Illinois: An Opportunity for Legislative and Judicial Cooperation,* 10 Loy. Chi. L.J. 169 (1979).) Where a statute is clear and unambiguous we must enforce it according to its terms. (*Nordine v. Illinois Power Co.* (1965), 32 Ill. 2d 421, 206 N.E.2d 709.) There is no issue presented here regarding the 'good faith' element of Parikh's settlement. Accordingly, the Act specifically bars Roper's claim for contribution." *Van Jacobs v. Parikh* (1982), 97 Ill. App. 3d 610, 612, 422 N.E.2d 979, 980-81.

The *Van Jacob* court's analysis applies with equal force to the case at bar. The distinguishing feature is that here, as in *Houser,* the claimant is a joint tortfeasor, where as in *Van Jacobs,* she was not. This feature in no way undermines the legislative intent evinced by the Act, which makes clear that a release executed in good faith discharges the tortfeasor outright from *all* liability for contribution. (Comment, Comparative Contribution: *The Legislative Enactment of the Skinner Doctrine,* 14 J. Mar. L. Rev. 173, 186 (1980).) We therefore find *Van Jacobs* to be persuasive authority on this issue.

Counsel for appellant asserts that *Van Jacobs* is distinguishable by the fact that there, the release was executed during pending litigation, while here, the release was executed when no litigation was pending. We have found no authority for the proposition that a release must be executed during pending litigation in order for it to act as a bar to subsequent contribution claims. The only reference to pending litigation in the Act itself is contained in the "Enforcement" provision:

"Sec. 5. Enforcement. A cause of action for contribution among joint tortfeasors may be asserted by a separate action before or after payment, by counterclaim or by third-party complaint in a pending action." (Ill. Rev. Stat. 1981, ch. 70, par. 305.)

The enforcement provision has been interpreted by this court "as covering situations *where no suit is pending* which was initiated by the injured party; however, when there is *a pending action,* the contribution claim should be asserted 'by counterclaim or by third-party claim' in that action." (Emphasis added.) (*Tisoncik v. Szczepankiewicz* (1983), 113 Ill. App. 3d 240, 245, 446 N.E.2d 1271, 1275.) The concept of pending litigation relates not, as counsel urges, to when a release must be executed, but rather to when and how a contribution claim may be asserted. The fact that Lucente's right to contribution had not ripened at the time the release was executed is immaterial to the effect of the general release on subsequent claims. The only relevant argument counsel could be making with the invocation of the "pending litigation" concept is that, absent a pending suit, a contribution claim could not have been within the contemplation of the parties at the time the release was executed. In light of the facts and circumstances of the transaction, this argument too must fail.

While we agree that the scope and extent of a release depends on the intention of the parties expressed therein (*Gladinus v. Laughlin* (1977), 51 Ill. App. 3d 694, 696, 366 N.E.2d 430, 432), and that the language of a release cannot be interpreted so broadly as to defeat a valid claim not then in the minds of the parties (*Clear-Vu Packaging, Inc. v. National Union Fire Insurance Co.* (1982), 105 Ill. App. 3d 671, 674, 434 N.E.2d 365, 368), we cannot ignore the clear and unambiguous language on the face of the instrument itself.

Where the language of a release is clear and unambiguous (*Murphy v. S-M Delaware, Inc.* (1981), 95 Ill. App. 3d 562, 565, 420 N.E.2d 456, 459), and the release is executed with knowledge of its meaning, absent an express limitation on the face of the release itself (*LaGrange Federal Savings & Loan Association v. Rock River Corp.* (1981), 97 Ill. App. 3d 712, 716, 423 N.E.2d 496, 500), or clear and convincing evidence of fraud, mutual mistake or mental incompetence (*McComb v. Seestadt* (1981), 93 Ill. App. 3d 705, 706, 417 N.E.2d 705, 707), causes of action covered by the release are barred. (*Artoe v. Navajo Freight Lines, Inc.* (1978), 65 Ill. App. 3d 119, 122, 382 N.E.2d 492, 495.) Neither unilateral nor self-induced mistake is sufficient to invalidate a clear release. *Meyer v. Murray* (1979), 70 Ill. App. 3d 106, 111-12, 387 N.E.2d 878, 882.

In the instant case, it cannot seriously be contended, in light of the clear language of the release, the express reservation of the right of released parties to pursue their legal remedies, and the circumstances surrounding the execution of the release, that eventual suit by Rakowski was an "unknown claim" not then in the minds of the par-

ties. Rakowski and his two passengers sustained personal injuries in the two-car accident. The possibility that Lucente's alleged negligence contributed to these injuries and that Rakowski and his passengers would attempt to obtain damages from Lucente existed at the time the release was executed. The clear language of the release states that the releasor understood and voluntarily accepted the terms of the release. Having voluntarily executed a release, the releasor cannot now avoid its legal effect. *Artoe v. Navajo Freight Lines, Inc.* (1978), 65 Ill. App. 3d 119, 127, 382 N.E.2d 492, 499.

For these reasons, we find that the general release executed pursuant to section 302(c) of the Contribution Among Joint Tortfeasor's Act bars Lucente's counterclaim for contribution. Ill. Rev. Stat. 1981, ch. 70, pars. 302(c), (d).

We therefore affirm the decision of the circuit court.

ROMITI, P.J., and JIGANTI, J., concur.